2001 OK 89

STATE of Oklahoma, ex rel., Lanita HENRICKSEN, Maria Erbar, Shelley Livermore, and Gladys Erbar, Plaintiffs–Appellants,

v.

STATE of Oklahoma ex rel., the CORPORATION COMMISSION OF the STATE OF OKLAHOMA, and Southwestern Bell Telephone Company, Defendants–Appellees,

and

Jeffrey Wayne Massey, Dr. James Garland Caster, Marshall Hawkins, Stan Abel, Charles Herbert Smith, Charles Herbert Smith, and Mark Henricksen, Plaintiffs.

No. 96,164.

Supreme Court of Oklahoma.

Oct. 16, 2001.

Maria Tully Erbar, Oklahoma City, OK, for Plaintiffs–Appellants.

Richard C. Ford and LeAnne Burnett, Crowe & Dunlevy, Oklahoma City, OK, for Defendant–Appellee, Southwestern Bell Telephone Company.

## OPINION

WATT, Vice Chief Justice,

### FACTS AND PROCEDURAL BACKGROUND

¶1 In 1999, Plaintiffs, ten Oklahoma taxpayers, filed suit in Oklahoma County under the Oklahoma *qui tam* statutes, 62 O.S.1991 §§ 372[1] and 373.[2] Plaintiffs challenged a settlement agreement involving Southwestern Bell Telephone Company, the Oklahoma Attorney General, and the Oklahoma Corporation Commission, as well as others, all of whom were parties to appeals from several rate cases before the Corporation Commission. The Corporation Commission formally approved the settlement agreement in an order dated October 30, 1995 and a subsequent supplemental order.

¶2 Under the terms of the settlement agreement Southwestern Bell agreed to give cash rebates and discounted or free services to those of its customers and ex-customers who met certain conditions. In return, the State of Oklahoma released to Southwestern Bell $500,000.00, which the state had held in escrow pending the appeals. The state also exonerated Southwestern Bell's pledge of unencumbered corporate assets worth $500,000,000.00.

¶3 The potential value of the refunds and services that Southwestern Bell agreed to furnish under the settlement agreement was $638,000,000.00. Plaintiffs claimed that Southwestern Bell failed either to make all of the cash payments or to provide all of the services as agreed. Plaintiffs also claimed that Southwestern Bell had fraudulently concealed that it had breached the settlement agreement. Plaintiffs sought judgment in an amount equal to the value of the rebates, free services, and discounted services, which

---

1. Title 62 O.S.1991 § 372 provides:

   Every officer of the state and of any county, township, city, town or school district, who shall hereafter order or direct the payment of any money or transfer of any property belonging to the state or to such county, city, town or school district, in settlement of any claim known to such officers to be fraudulent or void, or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement made or attempted to be made, for the state or any such county, city, town or school district, by any officer thereof, and every person, having notice of the facts, with whom such unauthorized, unlawful or fraudulent contract shall have been made, or to whom, or for whose benefit such money shall be paid or such transfer of property shall be made, shall be jointly and severally liable in damage to all innocent persons in any manner injured thereby, and shall be furthermore jointly and severally liable to the state, county, city, town or school district affected, for triple the amount of all such sums of money so paid, and triple the value of property so transferred, as a penalty, to be recovered at the suit of the proper officers of the state or such county, city, town or school district, or of any resident taxpayer thereof, as hereinafter provided.

2. Title 62 O.S.1991 § 373 provides:

   Upon the refusal, failure, or neglect of the proper officers of the state or of any county, township, city, town, or school district, after

written demand signed, verified and served upon them by ten resident taxpayers of the state or such county, township, city, town, or school district, to institute or diligently prosecute proper proceedings at law or in equity for the recovery of any money or property belonging to the state, or such county, township, city, town, or school district, paid out or transferred by any officer thereof in pursuance of any unauthorized, unlawful, fraudulent, or void contract made, or attempted to be made, by any of its officers for the state or any such county, township, city, town, or school district, or for the penalty provided in the preceding section, any resident taxpayer of the state or such county, township, city, town, or school district affected by such payment or transfer after serving the notice aforesaid and after giving security for cost, may in the name of the State of Oklahoma as plaintiff, institute and maintain any proper action which the proper officers of the State, county, township, city, town, or school district might institute and maintain for the recovery of such property, or for said penalty; and such municipality shall in such event be made defendant, and one-half (½) the amount of money and one-half (½) the value of the property recovered in any action maintained at the expense of a resident taxpayer under this section, shall be paid to such resident taxpayer as a reward.

Southwestern Bell had agreed to pay but had not actually paid out to its customers.

¶ 4 Southwestern Bell moved to dismiss plaintiffs' petition, which the trial court granted but gave plaintiffs leave to file an amended petition. Plaintiffs then filed their amended petition in which they added the allegation that Southwestern Bell had been guilty of fraudulently concealing that they had payed less than they owed under the settlement agreement.

¶ 5 Southwestern Bell moved to dismiss plaintiffs' amended petition. After the parties had briefed the issues and following oral argument, the trial court entered an order granting Southwestern Bell's motion to dismiss plaintiffs' amended petition. The trial court's order of dismissal was based on three grounds: (1) there was no transfer of state property or public money sufficient to invoke the *qui tam* statutes; (2) plaintiff failed to comply with the *qui tam* statute of limitations, 62 O.S. Supp.1994 § 374, which requires than any *qui tam* action be filed within two years of the alleged transfer of any property; and (3) the fraud plaintiffs alleged was fraud in the inducement of the settlement agreement, which should have been raised in the Corporation Commission. Plaintiffs then filed a motion to reconsider, which the trial court denied. For the reasons set forth in the balance of this opinion we hold that the trial court correctly dismissed plaintiffs' amended petition and denied their motion to reconsider.

## DISCUSSION

### I.

*The* qui tam *statutes do not apply because there was no transfer of state property or public money here.*

¶ 6 In order for a *qui tam* action to lie, there must have been a transfer of money or property that "involves a change of ownership and possession." *State ex rel. Twist v. Bailey,* 1956 OK 103 ¶ 4, 295 P.2d 763, 765. The settlement agreement replaced the Corporation Commission's rate orders and, under the terms of the agreement, the appeal bonds were exonerated. At most, the state's agreement on this score represented a failure to collect what this Court might have found it to be entitled. Thus, there was no "payment of any money or transfer of any property belonging to the state." 62 O.S.1991 § 372 (note 1).

¶ 7 The *qui tam* statutes are penal in nature. In order for those statutes to apply, "There must have been a paying out of [state] funds or a transfer of [state] property." *Twist,* 1956 OK 103 at ¶ 1, 295 P.2d at 763. As indicated, no such transfer took place here. Indeed, plaintiffs did not allege that there was a transfer. Instead, in their amended petition they claimed a right to judgment because of money or property "which were to be transferred" and "which was supposed to have been transferred." The money or property at issue here was money collected by Southwestern Bell from its customers. None of that money was ever in the hands of any state agency.

¶ 8 Plaintiffs claim that *State ex rel. Hettel v. Security National Bank & Trust Co. in Duncan,* 1996 OK 53, 922 P.2d 600 and *State ex rel. Higgs v. Muskogee Iron Works,* 1940 OK 264, 103 P.2d 101, support their claim that there was, indeed a change in ownership or possession sufficient to support their *qui tam* claim. Our analysis of *Hettel* and *Higgs,* however, convinces us that neither opinion supports plaintiffs position. In *Hettel* we held that there was an issue of fact presented but there, unlike the situation that exists here, the transfer complained of was a loan of the proceeds of a general obligation bond issue to an industry. Plaintiffs claim that *Higgs* stands for the proposition that "dispositions" of property are different from "transfers." We hold that *Higgs* clearly does not stand for such a proposition. There we relied on the rule that the *qui tam* statutes, "like all penal statutes must be strictly construed."

¶ 9 Plaintiffs seek to distinguish *State ex rel. Twist v. Bailey,* 1956 OK 103, 295 P.2d 763, as well as others of our opinions, in which we have held that, because the *qui tam* statutes must be strictly construed, an actual transfer of money or property is a prerequisite to the prosecution of a *qui tam*

action.[3] We find plaintiffs' attempts to distinguish these clear requirements of the law unconvincing. We have carefully reviewed our jurisprudence on this issue and have found nothing in it to support plaintiffs' claim that there was a "transfer" here sufficient to support plaintiffs' *qui tam* claim.

## II.

*Plaintiffs' qui tam action, even if viable, is barred by the applicable statute of limitations, 62 O.S. Supp.1994 § 374.*

¶ 10 In 1994 the Legislature enacted a statute of limitations governing *qui tam* actions, 62 O.S. Supp.1994 § 374. Section 374 provides,

> Civil actions filed by taxpayers for the recovery of real or personal property can only be brought if the written demand upon the proper officers is made by the required resident taxpayers within two (2) years of the transfer of the property, and the civil suit is filed within six (6) months following the refusal, failure, or neglect of the proper officers to act upon the written demand.

We have not previously interpreted this statute. That is the reason we granted appellants' motion to retain this appeal.

¶ 11 Section 374 requires that written demand be made on the appropriate officers "within two (2) years of the transfer of the property." It is undisputed that the property alluded to in plaintiffs' amended petition was transferred, at the latest, in 1995 or 1996 and that plaintiffs never gave a written notice and filed their suit in September 1999. Thus, § 374's two year limitations period has run.

¶ 12 Plaintiffs argued that the statute of limitations cannot apply here because they seek to vindicate public rights. Plaintiffs rely on *State ex rel. Schones v. Town of Canute*, 1993 OK 90, 858 P.2d 436, in which we held no statute of limitations in effect at the time barred a cause of action asserted under §§ 372 and 373 because the plaintiffs

were enforcing public rights. We so held based on our perception that because Oklahoma "public policy requires that every reasonable presumption favors governmental immunity" from statutes of limitations, no statute of limitations in effect at the time served to bar the plaintiffs' action. *Schones* at ¶ 8, quoting with approval from *City of Oklahoma City v. HTB, Inc.*, 1988 OK 149 at ¶ 13, 769 P.2d 131, 134. We hold, however, that *Schones* is no longer good law. In 1994, the year after we decided *Schones*, the Legislature enacted § 374, which expressly and unambiguously requires that notice of *qui tam* claims under §§ 372 and 373 be given to the appropriate public officials "within two (2) years of the transfer of the property."

¶ 13 The conclusion is inescapable that the Legislature enacted § 374 in response to *Schones*. By so doing the Legislature made clear that Oklahoma public policy subjects *qui tam* actions under §§ 372 and 373 to the two year statute of limitations contained in § 374. As plaintiffs did not comply with the limitations period set forth in § 374, their action under §§ 372 and 373 is barred.

¶ 14 Plaintiffs also contended that even if their claim for actual damages is barred their claim for the treble damages penalty is not. Plaintiffs cite no cases in which a *qui tam* action has been allowed to proceed for recovery of the penalty but not for actual damages and we know of none. We see no basis for allowing such a result. Section 372 provides that violators of its terms,

> ... shall be jointly and severally liable in damage to all innocent persons in any manner injured thereby, and shall be furthermore jointly and severally liable to the state, county, city, town or school district affected, for triple the amount of all such sums of money so paid, and triple the value of property so transferred, as a penalty....

We interpret this language to mean that a right to recover actual damages is a prereq-

**3.** Plaintiffs seek to distinguish *State ex rel. Sweeney v. Oklahoma Natural Gas Corp.*, 1936 OK 357, 57 P.2d 626; *State ex rel. Sweeney v. Public Service Co.*, 1937 OK 98, 66 P.2d 926; *State ex rel. Trimble v. City of Moore*, 1991 OK 97, 818 P.2d 889; and *State ex rel. Burk v. Oklahoma City*, 1973 OK 134, 522 P.2d 612.

uisite to the recovery of the treble damages penalty. Furthermore, § 374 requires that notice of a *qui tam* claim under §§ 372 and 373 be made within two years "of the transfer of the property" but makes no distinction between the actual damages and the treble damages penalty that such a claim might produce. We hold, therefore, that without the recovery of state property there can be no penalty.

### III.

*The complaints of fraud that plaintiffs allege against Southwestern Bell must be raised in the Corporation Commission.*

¶ 15 Plaintiffs claim that Southwestern Bell's fraudulent concealment of wrongdoing tolls the statute of limitations. Among other cases, plaintiffs rely on *Flowers v. Stanley,* 1957 OK 237, 316 P.2d 840. In *Flowers* we held that defendant's fraudulent concealment of an altered deed tolled the statute of limitations in a suit to reform the deed against the defendant-grantor by the plaintiff-grantee. The difference between *Flowers,* as well as the other cases cited for this proposition by plaintiffs, and the case at bar is that here any fraud was committed on the Corporation Commission. The payments to Southwestern Bell by its customers created the fund that was at issue before the Corporation Commission. The Corporation Commission has exclusive jurisdiction over the rates and practices of public utilities. Okla. Const. Art. 9 § 18 provides in material part,

> The Commission shall have the power and authority and be charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies . . .

¶ 16 In recognition of the powers and responsibilities of the Corporation Commission the parties to the settlement agreement structured the agreement so that its terms were incorporated into a Corporation Commission order. We held in *Leck v. Continental Oil Co.,* 1989 OK 173 ¶ 22, 800 P.2d 224, 230 that misrepresentations alleged to have been made to the Corporation Commission are "intrinsic fraud." There we said, "Relief from intrinsic fraud must be made by direct attack in the same case in which the fraud was committed." The claimed misrepresentations of Southwestern Bell here, if proved, would be violations of the Corporation Commission's order that incorporated the settlement agreement's terms. Thus, such claimed misrepresentations are not the proper subject of a *qui tam* action but must be raised before the tribunal with exclusive jurisdiction to consider them, the Oklahoma Corporation Commission.

### CONCLUSION

¶ 17 The trial court correctly dismissed plaintiffs' amended petition and denied their motion to reconsider on the grounds stated in its journal entry of judgment: (1) there was no transfer of state property or public money sufficient to invoke the *qui tam* statutes; (2) plaintiff failed to comply with the *qui tam* statute of limitations, 62 O.S. Supp.1994 § 374, which requires than any *qui tam* action be filed within two years of the alleged transfer of any property; and (3) the fraud plaintiffs alleged was "intrinsic fraud," which must be raised in the Corporation Commission.

AFFIRMED.

HARGRAVE, C.J., LAVENDER, OPALA, KAUGER, SUMMERS, BOUDREAU, and WINCHESTER, JJ.—concur.

HODGES, J.—not participating.