¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. If an agency or instrumentality of the State of Oklahoma is thevictim of a crime by one who deprives the agency or instrumentality ofpublic funds under its management, is it the duty of the agency orinstrumentality to report the crime to the appropriate agency orofficial charged with protecting the interests of the State of Oklahomafrom wrongdoing?
 2. What person or group (i.e., such as a board or commission thatsupervises the agency) is charged with the duty to report the crime?
 3. How soon is such report to be made?
 4. Is there any formality for the report or will a letter containingall material facts of such criminal activity suffice?
 5. To what public agency or official must the report be made: forexample, the Attorney General, the District Attorney, the Oklahoma StateBureau of Investigation, etc., or to two or more of these agencies?
 6. Must the report include the amount and/or nature of the publicfunds taken by the criminal perpetrator to the extent the agency and/orpublic official(s) knows or reasonably should know?
 7. Is the answer the same if the perpetrator was an individual, agroup of individuals (such as a criminal conspiracy) or officers ormembers of a corporation or like entity?
 8. If there is more than one perpetrator who acts in concert as acriminal conspiracy, is each individual member of such criminalconspiracy liable for the entire loss of public funds?
 9. Under these circumstances and those where a state agency pays outmoney illegally, such as overpayment of services or payment on anillegal contract, what public official and/or agency has the duty toseek recovery of public funds wrongfully taken?
 10. Is the duty to recover public funds an affirmative duty of thepublic officer and/or agency, or may such recovery be ignored, abandonedor otherwise waived by the officer and/or agency?
 11. Is there any period of limitation or repose that runs against theState of Oklahoma, its agency wronged by the criminal taking of publicfunds, or any officer representing such agency?
 12. Would the answer be the same with regard to counties and municipalpolitical subdivisions?
 13. Does the failure of a public officer (whether an agency head or aboard or commission member) to either report a crime or seek recovery ofstolen public funds constitute a breach of that officer's oath ofoffice?
 14. If so, what is the appropriate legal action to be taken to enforcethe violation of the oath of office?
¶ 1 You ask a number of questions relating to whether there is a duty on the part of a state agency or instrumentality to report to the proper authorities when a crime is committed against the agency or instrumentality which results in the loss of public funds. You also ask questions regarding the duty of state officials to recover state money that has been taken by criminal wrongdoing or has been illegally expended. We will divide our analysis into a discussion of those questions involving a duty to report criminal misconduct committed against a state agency and those involving a duty to recover money illegally expended by a state agency.
 I. Oklahoma Law Does not Impose a Duty on a State Agency or Instrumentality to Report a Crime Committed Against the State Agency or Instrumentality Which Results in the Loss of Public Funds.
¶ 2 You ask whether a state agency or instrumentality, or an officer of such entity, has a duty to report a crime committed against the state agency or instrumentality which results in the loss of public funds. Assuming such a duty exists, you also ask several questions regarding the procedures for reporting such a crime. Whether these procedural questions are to be answered depends on our resolution of the threshold question of whether a state agency or instrumentality has a duty to report to the proper authorities when a person, through criminal wrongdoing, deprives the state agency or instrumentality of public funds under its management. A possible scenario is when an employee of a state agency commits an act constituting a crime that results in the loss of state funds, such as embezzlement of public funds or filing a false, fictitious or fraudulent claim. In the scenario, the state agency chooses to discipline the employee in some manner such as suspension or termination rather than reporting the criminal wrongdoing to the appropriate authorities and seeking recovery of the funds. Your questions could also arise from a situation where a non-employee commits a crime against a state agency which results in the loss of public funds.
¶ 3 We begin with the recognition that although Oklahoma law does not place a general duty on victims of crime to report crimes committed against them, the law contains certain reporting requirements for those who become aware of specific criminal activity. For instance, 10 O.S. 2001, § 7103[10-7103](A)(1), part of the Oklahoma Child Abuse Reporting and Prevention Act, requires any person having reason to believe a child under the age of 18 is a victim of abuse or neglect to report the matter to the Department of Human Services. Title 10 O.S.Supp. 2008, § 7104[10-7104], requires health care professionals who are examining, attending or treating the victim of what appears to be criminally injurious conduct to report the matter promptly to the nearest law enforcement agency in the county where the conduct occurred or, if that county is not known, where the injury is treated. A specific duty to report is also found in the Oklahoma Sex Offenders Registration Act, which requires any person discovering an employment or registration violation for any person currently employed to work with or provide services to children to report such findings to the district attorney. 57 O.S.Supp. 2008, § 589[57-589](B)(2). A duty to report to a local law enforcement agency is also imposed on veterinarians who suspect cases of animal abuse. 21 O.S.Supp. 2008, § 1680.3[21-1680.3](A). However, there is no general requirement that a victim of a crime report the commission of the crime to law enforcement or any state, county or municipal official.
¶ 4 As no general duty exists for victims of crime to report crimes committed against them, we look to whether the unique nature of state agencies or instrumentalities places them in a different position than other victims of crime such that a duty to report exists. State agencies are entrusted with public funds and state officers are required to perform the duties prescribed for them by law. Individual state officials have specific authority and powers set out by statutory enactments and constitutional provisions. For example, the State Auditor and Inspector has a duty when an audit "reveals irregularities or dereliction in the receipt or disbursement or management of public funds or property which are grounds for prosecution" to file a report with the Governor and the Attorney General within 30 days setting forth in detail such irregularities or derelictions. 74 O.S. 2001, § 223[74-223]. It then becomes the duty of the Attorney General "to conduct an investigation to determine if prosecution is warranted and to prosecute by either civil or criminal action or both if he determines prosecution is warranted." Id.
¶ 5 Oklahoma statutes also place a duty on the State Auditor and Inspector to report criminal misconduct with regard to monies due the Commissioners of the Land Office. Title 64 O.S. 2001, § 87c[64-87c] requires the State Auditor and Inspector to file a report with the Commissioners of the Land Office and the Attorney General. Where criminal action is warranted, the State Auditor and Inspector is to file a report with the local district attorney, who has a mandatory duty to "diligently prosecute such criminal action as may be warranted against any person or persons charged with the wrongful withholding of any such sums." Id. If such an action is not prosecuted within 90 days after filing the report, it is the duty of the Attorney General to prosecute the action in his own official capacity "and with all the rights, powers and privileges theretofore belonging to the officer or officers first charged with such duties, had the action, whether civil or criminal, been timely brought."Id.
¶ 6 Although specific statutes such as these are in place to govern certain officers, we find nothing in the Constitution or laws of this State which places a general duty upon state agencies or instrumentalities or their officers to report criminal activity which results in the loss of public funds. We likewise find nothing in Oklahoma law that would require us to interpret the general duty of state officers to manage funds with which they have been entrusted as placing upon them a duty to report criminal wrongdoing.
¶ 7 Because we have answered question one in the negative, it is not necessary to address your remaining questions pertaining to reporting criminal misconduct when a state agency is a victim of a crime which deprives the agency of public funds under its management. We will, however, address those questions relating to a duty to recover public funds.
 II. Although Specific Statutes Require Certain State Officers to Recover Public Funds in Certain Instances, There is no Law That Generally Requires State Officers to Recover Public Funds.
¶ 8 You also ask whether state agencies or instrumentalities and their officials are required to seek recovery of state funds which have been expended illegally. An example of such a situation would be where a state agency pays out funds under an illegal contract or where a state agency overpays for services.
¶ 9 There are a number of specific statutes which require that actions be instituted to recover public funds which have been expended illegally. For instance, the Legislature has provided that one of the duties of the Attorney General is "[t]o institute actions to recover state monies illegally expended, to recover state property and to prevent the illegal use of any state property, upon the request of the Governor or the Legislature[.]" 74 O.S. 2001, § 18b[74-18b](A)(10). This statute does not place a duty on the Attorney General to recover state funds in all instances, but requires the Attorney General to do so at the request of the Governor or the Legislature.
¶ 10 The Attorney General also has a role in 8 O.S. 2001, § 170[8-170], the statute governing recovery of monies at the request of the State Banking Commissioner. That statute provides:
 The Attorney General of this state, at the request of the State Banking Commissioner, may initiate an action to recover payments required to be deposited to the Oklahoma State Banking Department revolving fund pursuant to the Perpetual Care Fund Act or to recover other monies received or disbursed in violation of the Perpetual Care Fund Act. In addition, the Attorney General may seek to enjoin any violation of the Perpetual Care Fund Act.
Id.
¶ 11 The State Banking Commissioner may also request the Attorney General to "initiate an action to recover payments required to be redeposited to the cemetery merchandise trust pursuant to the Cemetery Merchandise Trust Act or to recover other moneys received or disbursed in violation of the Cemetery Merchandise Trust Act." 8 O.S. 2001, § 311[8-311] (footnote omitted).
¶ 12 The Attorney General also has a duty when it is called to his attention to sue in the name of the State of Oklahoma when there is a breach upon bonds required of persons appointed or employed by state officers, boards and commissions. 74 O.S. 2001, § 593[74-593]. These bonds, in amounts fixed by the state officer, board or commission requiring the bond, are made payable to the State of Oklahoma, and are required when deemed necessary to protect the State against loss or misapplication of public funds. Id.
¶ 13 District attorneys have a duty to recover property offered for sale, distribution or disposition in violation of the lottery statutes. 21 O.S. 2001, § 1062[21-1062]. It is the duty of the district attorney to "demand, sue for, and recover, in behalf of this state, all property so forfeited, and to cause the same to be sold when recovered." Id.
¶ 14 Statutes also exist within the School Code of 1971 governing monies illegally disbursed or expended by a school district. Title 70 O.S. 2001, § 18-118[70-18-118](C) provides:
 If audits disclose that state monies have been illegally apportioned to, or illegally disbursed or expended by, a school district or any of its officers or employees, the State Board of Education shall make demand that said monies be returned to the State Treasurer by such school district. If said monies are not returned, the State Board shall withhold the unreturned amount from subsequent allocations of state funds otherwise due the district. The State Board of Education shall cause suit to be instituted to recover for the state any monies illegally disbursed or expended, if not otherwise recovered as provided herein.
Id.; see Indep. Sch. Dist. No. I-20 v. Okla. State Dept. of Educ.,65 P.3d 612, 620 (Okla. 2003) (interpreting this statute to require recoupment of state funds which were overpaid due to a computer error).
¶ 15 This list, which is not all-inclusive, demonstrates that the duty to recover money illegally expended is governed by specific statutes. The language of the specific statutes governs whether the duty to recover is mandatory or permissive. Statutes which provide that a certain official "shall" recover monies are generally mandatory, while those that use the term "may" are ordinarily permissive. See Osprey,L.L.C. v. Kelly-Moore Paint Co., 984 P.2d 194, 199 (Okla. 1999). The language of the specific statutes must be examined to answer your question of whether the duty to recover public funds is a duty which may be ignored, abandoned or otherwise waived.
¶ 16 Our research reveals no statutory or constitutional provisions which place a general duty to recover state funds on state agencies or instrumentalities, or their officials.
 III. County and Municipal Officers Have no General Duty to Report Instances of Criminal Misconduct Which Result in the Loss of Public Funds to Counties or Municipalities and Have no General Duty to Recover Funds That Have Been Illegally Expended.
¶ 17 You also ask whether our answers would be the same regarding a county or municipal political subdivisions. We have found no statute or constitutional provision which places an affirmative duty on a county or municipal officers in general to report criminal wrongdoing that results in the loss of public funds. Likewise, there is no statutory or constitutional duty on county or municipal officers as a whole to recover funds illegally expended. Therefore, our answers would be the same as to county and municipal political subdivision officeholders.
 IV. Where There Has Been an Illegal Transfer of Money or Property, Governmental Officials May Have a Duty to Institute Proceedings to Recover Public Funds Unlawfully Expended. Failure to Seek Recovery Upon Written Demand Authorizes an Affected Taxpayer to File a Qui Tam Action to Recover Public Funds or Public Property Paid out Illegally.
¶ 18 Government officials may have a duty to recover public funds in certain situations pursuant to the qui tam statutes. 62 O.S. 2001 
Supp. 2008, §§ 372, 373. These provisions apply when an officer has ordered or directed the payment of "any money or transfer of any property belonging to the state or to such county, city, town or school district, in settlement of any claim or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement made or attempted to be made, for the state or any such county, city, town or school district, by any officer thereof, known to such officer to be fraudulent or void. . . ." Id. § 372. Every person who enters into such contract with knowledge of the facts and every person for whose benefit such money is paid or property is transferred is jointly and severally liable to all innocent persons for triple the amount of money paid or triple the value of property transferred. Id. The damages shall be recovered by the proper officers or a resident taxpayer filing suit pursuant to Section 373.
¶ 19 Under Section 373, if an officer refuses, fails or neglects to seek recovery after a written demand by ten resident taxpayers, the taxpayer may institute proceedings in the name of the governmental entity as plaintiff to recover the money paid out illegally or without authority. State ex rel. Trimble v. City of Moore, 818 P.2d 889, 894
(Okla. 1991). A qui tam remedy allows the taxpayer to recover public funds with triple damages. 62 O.S.Supp. 2008, § 372[62-372]. One-half of the money collected is to be paid to the taxpayer as a reward and the other half goes to the state or subdivision.[1] 62 O.S. 2001, § 373[62-373].
¶ 20 The qui tam statute has been interpreted to apply only where there has been a transfer of money or property that involves a change of ownership and possession. State ex rel. Henricksen v. State ex rel.Corp. Comm'n, 37 P.3d 835, 838 (Okla. 2001). The statutes would not apply to funds taken by criminal wrongdoing, but may apply if a government entity enters into a contract resulting in the illegal expenditure of public funds or otherwise transfers money illegally. These statutes, applicable to state, county and municipal officials, hold the governmental official liable for the illegal expenditure and place an affirmative duty on the proper government official, upon written demand, to institute proceedings to recover money that was paid out illegally or without authority.
 V. Statutory Limitation Periods do not Apply to Actions Brought by Government Entities to Vindicate Public Rights.
¶ 21 You also ask whether there is a "period of limitation or repose" that runs against a state agency that has been wronged by the criminal taking of public funds. Initially, we note there is a distinction between a "period of limitation," also known as a "statute of limitation," and a "statute of repose." As the Supreme Court explained in Oklahoma CityMunicipal Improvement Authority v. HTB, Inc., 769 P.2d 131, 136-37
(Okla. 1988):
 [T]hey are different in the sense that a statute of limitations serves to place a limit on the plaintiff's time to bring an action. After the prescribed time period has lapsed, a statute of limitation serves to extinguish the remedy for the redress of an accrued cause of action. A statute of repose, by way of contrast, restricts potential liability by limiting the time during which a cause of action can arise. It thus serves to bar a cause of action before it accrues. In a practical sense, a statute of limitation implicitly seeks to punish those who sleep on their rights, while a statute of repose, operates to bar some plaintiffs' recovery, no matter how diligent they may have been in asserting their claims.
Id. (quoting Smith v. Westinghouse Elec. Corp., 732 P.2d 466, 468-69 n. 11 (Okla. 1987)). Statutes of repose typically affect claims for products liability, medical malpractice and defective improvements to real property. Id. For example, 12 O.S. 2001, § 109[12-109], provides that no tort for actions to recover damages created by deficiency in improvement to real property may be brought more than ten years after substantial completion of the improvement. Whether a period of repose exists for a particular cause of action is a fact question depending on the statute governing the particular action brought.
¶ 22 Your questions appear to relate to the time period for bringing an action and are properly addressed under the legal authority applicable to a period of limitation. The limitation period for any particular cause of action depends upon the action being pursued. If criminal charges are to be filed against the perpetrator of a crime the prosecution is governed by the period of limitation set forth at 22 O.S.Supp. 2008, § 152[22-152]. That statute establishes specific limitation periods for certain crimes, with some prosecutions to be commenced within a certain period of time after commission of the crime and others within a certain period of time after discovery of the crime. See id.
¶ 23 For civil actions, once a cause of action arises, applicable limitation periods begin to operate placing a limit on the availability of a remedy. Title 12 O.S.Supp. 2008, § 95[12-95](A), governs the periods of limitation for civil cases other than the recovery of real property. The type of action brought governs the applicable limitation period. For instance, actions based upon a written contract are to be brought within five years. Id. § 95(A)(1). Actions on contracts not in writing are to be brought within three years. Id. § 95(A)(2). An action for relief on grounds of fraud is to be brought within two years after discovery of the fraud. Id. § 95(A)(3).[2]
¶ 24 An exception to the statutory limitation period exists, however, for government entities seeking to vindicate public rights. HTB,Inc., 769 P.2d at 134. In HTB, Inc., the court stated:
 [S]tatutes of limitation shall not bar suit by any government entity acting in its sovereign capacity to vindicate public rights, and that public policy requires that every reasonable presumption favor government immunity from such limitation.
Id. (emphasis added). The difficulty with applying this principle comes in identifying what constitutes a public right. In State ex rel.Cartwright v. Tidmore, 674 P.2d 14, 16 (Okla. 1983), the court explained the test as "whether the right is such as to affect the public generally or merely affects a class of individuals." See also Sears v. Fair,397 P.2d 134, 137 (Okla. 1964) (applying the same test).
¶ 25 Under this test, municipalities and counties may come within the exception to the applicable period of limitation if the municipality is vindicating rights of the public at large as opposed to those of the county or municipality only. The court discussed this with regard to municipalities in HTB, Inc., 769 P.2d at 136, when it determined that a long-term plan for the extension and improvement of water mains used to supply water to the Oklahoma City area was a right affecting not only certain citizens but also "the rights of travelers, of fairgoers, of horserace fans, and of businesses contemplating expansion or relocation."Id. The court commented that "[w]ater is fundamental to existence," and noted "[t]his necessity entitles the general public to expect an adequate water supply in the Oklahoma City area." Id.
¶ 26 Courts have applied the public right requirement broadly, finding a public right to exist for recoupment of unemployment benefits received by virtue of a false statement or failure to disclose a material fact (State ex rel. Okla. State Employment Comm'n v. Thompson, 76 P.3d 88, 90
(Okla.Civ.App. 2003)); recovery of student loans by the Oklahoma Student Loan Authority (State ex rel. Okla. Student Loan Auth. v. Akers,900 P.2d 468, 469-70 (Okla.Civ.App. 1995)); judgment for reimbursement of child support arrearages for children for whom public assistance had been paid (Lewandowski v. Lewandowski, 862 P.2d 86, 87 (Okla.Civ.App. 1993)); and a suit compelling the conveyance of property purchased for a county courthouse site and street (Herndon v. Bd. of Comm'rs, 11 P.2d 939, 941
(Okla. 1932)).
¶ 27 Courts have refused to apply the exception to a suit to recover private funds administered by a state university in State ex rel. Boardof Regents v. Livingston, 111 P.3d 734, 737 (Okla.Civ.App. 2005), and to a suit by one municipality against another municipality which involved purely fiscal accounting between the two municipalities inBrown v. Board of Education, 298 P. 249, 253 (Okla. 1931).
¶ 28 Courts have recognized that even if the right vindicated is a public one, a statute of limitation may be operative if state law specifically provides for one. See State ex rel. Okla. Dep't of Transp.v. Bd. of County Comm'rs, 174 P.3d 1010, 1011 (Okla.Civ.App. 2007); Stateex rel. Okla. Tax Comm'n v. Emery, 645 P.2d 1048, 1049 (Okla.Civ.App. 1982). If an action is commenced under the qui tam statute there is a two-year statutory time from the transfer of the property for making the written demand and six months for the proper official to act. Title 62 O.S. 2001, § 374[62-374], enacted in 1994, provides:
 Civil actions filed by taxpayers for the recovery of real or personal property can only be brought if the written demand upon the proper officers is made by the required resident taxpayers within two (2) years of the transfer of the property, and the civil suit is filed within six (6) months following the refusal, failure, or neglect of the proper officers to act upon the written demand.
Id. The Supreme Court interpreted this statute for the first time inHenricksen, 37 P.3d at 839, finding that Section 374 "expressly and unambiguously requires that notice of qui tam claims under §§ 372 and 373 be given to the appropriate public officials `within two (2) years of the transfer of the property.'" Id. The court found "the Legislature made clear that Oklahoma public policy subjects qui tam actions . . . to the two year statute of limitations contained in § 374." Id.
¶ 29 To summarize, in a civil action there is no period of limitation if a governmental entity, be it state, county, or municipality, pursues an action to vindicate a public right. If an action is brought pursuant to the qui tam statutes, written notice must be given to the proper officers within two years of the transfer of the property. Other civil actions and criminal prosecutions are subject to the statutory period of limitation applicable to the particular action pursued.
 VI. Absent a Statutory Requirement to do so, the Failure of a Public Official to Either Report a Crime or Seek Recovery of Funds Illegally Expended Does Not Violate the Official's Oath of Office.
¶ 30 You also ask whether the failure of a public official to either report a crime or seek recovery of funds illegally expended constitutes a breach of the official's oath of office. Oklahoma has both a constitutional oath and a statutory oath for public officers. The constitutional oath of office is set forth in the Oklahoma Constitution at Article XV, Section 1. The Constitution requires all public officers to take and subscribe to the following oath or affirmation:
 I, . . . . . . ., do solemnly swear (or affirm) that I will support, obey, and defend the Constitution of the United States, and the Constitution of the State of Oklahoma, and that I will not, knowingly, receive, directly or indirectly, any money or other valuable thing, for the performance or nonperformance of any act or duty pertaining to my office, other than the compensation allowed by law; I further swear (or affirm), that I will faithfully discharge my duties as. . . . . . . to the best of my ability.
Id. The constitutional oath contains four affirmations: that an officer will (1) support and defend the Constitution of the United States, (2) support and defend the Constitution of the State of Oklahoma, (3) not knowingly receive money or other valuable thing for the performance or nonperformance of any act or duty pertaining to the office, and (4) faithfully discharge his or her duties to the best of his or her ability. The issues about which you ask, the act of not reporting criminal wrongdoing that deprives an agency of public funds or not seeking recovery of state funds illegally expended, do not constitute receiving something of value for the performance or nonperformance of an act. Therefore, such actions may violate the oath only if the conduct violates the Oklahoma or United States Constitution or is contrary to an officer's duty. As discussed above, no Oklahoma law, constitutional or otherwise, requires reporting when a state agency or instrumentality is the victim of criminal misconduct. Nor is there any federal constitutional provision which requires reporting of criminal misconduct by state, county or municipal officials. Furthermore, as we have stated above, there is no affirmative duty on the part of state officers in general to report evidence of criminal wrongdoing resulting in the loss of public funds. Therefore, the conduct about which you ask does not violate a public officer's constitutional oath. If a particular officer has a statutory duty to report criminal wrongdoing or to seek recovery of public funds illegally expended, that officer may be in violation of his or her oath for failing to "faithfully discharge [his or her] duties . . . to the best of [his or her] ability." Id.
¶ 31 A cumulative statutory oath also exists under Oklahoma law for state officers and state employees.[3] That oath, found at 51 O.S.Supp. 2008, § 36.2[51-36.2](A), is as follows:
 I do solemnly swear (or affirm) that I will support the Constitution and the laws of the United States of America and the Constitution and the laws of the State of Oklahoma, and that I will faithfully discharge, according to the best of my ability, the duties of my office or employment during such time as I am _________________________________________________________________________
 (Here put name of office, or, if an employee, insert "An Employee Of ___________________" followed by the complete designation of the employing officer, agency, authority, commission, department or institution.). . . .
Id. This statutory oath differs from the constitutional oath in that it requires the officer to swear or affirm that he or she will support and defend not only the United States and Oklahoma Constitutions but also the laws of the United States and the State of Oklahoma. As we have established above that Oklahoma law does not place a general duty to report criminal wrongdoing resulting in the loss of public funds on its officers, failure to do so does not violate the statutory oath. If a specific officer or employee has a statutory duty to report criminal wrongdoing or to seek recovery of funds, it may constitute a violation of that person's statutory oath if no action is instituted.
¶ 32 There is no penalty for a violation of one's oath of office, per se; however, penalties are in place for the commission of acts which constitute a violation of one's oath of office. For instance, an elected official may be subject to impeachment pursuant to Okla. Const. art. VIII, § 1, "for wilful neglect of duty, corruption in office, habitual drunkenness, incompetency, or any offense involving moral turpitude committed while in office." Id. The procedures for impeachment proceedings are set forth at 51 O.S. 2001, §§ 51[51-51] through 71. Whether an officer's failure to recover public funds that have been illegally expended is a proper subject for impeachment, is based on particularized facts.
¶ 33 A non-elected officer may be subject to removal from office pursuant to 22 O.S. 2001, §§ 1181[22-1181] through 1196, which provide for removal under certain circumstances and establish procedures for determining if removal is warranted. Ouster proceedings may also apply to officers not subject to impeachment and all county, city and municipal officers. See 51 O.S. 2001 Supp. 2008, §§ 91 — 105.
¶ 34 Provisions also exist at 51 O.S. 2001, § 24.1[51-24.1](A), for the removal of elected or appointed state or county officers who have been found guilty of a felony, or who plead guilty or nolo contendere to a felony. If the felony or other offense violates his or her oath of office, the officer shall forfeit all benefits of the office, including retirement benefits. Id. A court is without jurisdiction to make a judicial determination that an officer has forfeited or vacated his or her office unless the officer has been convicted in a court of competent jurisdiction. State ex rel. Blankenship v. Freeman, 440 P.2d 744, 753-54
(Okla. 1968).
¶ 35 It is, therefore, the official Opinion of the Attorney Generalthat:
 1. Oklahoma law does not place a constitutional or statutory duty on state, county or municipal officers to report criminal wrongdoing that results in the loss of public funds.
 2. Oklahoma law does not place a general duty on state, county or municipal officers to recover public money wrongfully expended. However, certain Oklahoma statutes place a duty on specific officers to initiate proceedings to recover public funds wrongfully expended. See, e.g., 74 O.S. 2001, § 223; 64 O.S. 2001, § 87c; 74 O.S. 2001, § 18b(A)(10); 8 O.S. 2001, §§ 170, 311; 70 O.S. 2001, § 8-118©.
 3. Actions brought by government entities suing to vindicate legal rights which are public in nature are not barred by any period of limitation of actions. Okla. City Mun. Improvement Auth. v. HTB, Inc., 769 P.2d 131, 137 (Okla. 1989). The test for determining whether a right is public or private is whether the right is such as to affect the public generally or whether it merely affects a class of individuals. State ex rel. Cartwright v. Tidmore, 674 P.2d 14, 16 (Okla. 1983). Whether a particular right is a public or private one is a question of fact, which cannot be answered in an Attorney General Opinion. See 74 O.S. 2001, § 18b(A)(5). Actions which are not public in nature are governed by the statutory period of limitation applicable to the particular cause of action pursued. See 12 O.S. Supp. 2008, § 95[12-95] (periods of limitation for civil offenses); 22 O.S. Supp. 2008, § 152[22-152] (periods of limitation for criminal charges).
 4. Qui tam statutes, 62 O.S. 2001, Supp. 2008, §§ 372 and 373, hold public officers who order or direct the payment of "any money or transfer of any property belonging to the state or to such county, city, town, or school district, in settlement of any claim or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement made or attempted to be made, for the state or any such county, city, town or school district, by any officer thereof, known to such officer to be fraudulent or void" liable for triple damages. Id. § 372. Failure of the officer to seek recovery upon written demand of ten resident taxpayers authorizes an affected taxpayer to institute an action for recovery which authorizes the taxpayer to keep one-half of the recovery as a reward. Id. § 373.
 5. Actions brought pursuant to the qui tam statutes may be brought only if the written demand upon the proper officer is made within two years of the transfer of the property and the civil suit is filed within six months "following the refusal, failure, or neglect of the proper officers to act upon the written demand." 62 O.S. 2001, § 374[62-374].
 6. As there is no duty to report criminal wrongdoing that results in the loss of public funds or to seek recovery of lost funds, a state officer's or employee's decision not to report criminal wrongdoing or seek recovery of funds the state agency is deprived of does not violate either the statutory or constitutional oath of office. Okla. Const. art. XV, § 1; 51 O.S. 2001, § 36.2(A). A specific state officer or employee who has a duty to report criminal wrongdoing or to seek recovery of funds and does not do so may be found to have violated the oath of office. Whether the oath is violated is a question of fact dependent on the individual circumstances.
 7. Various penalties exist for state officers who are found to have committed acts that also constitute a violation of their oaths of office. Those remedies include impeachment, ouster, removal from office and loss of retirement benefits. Okla. Const. art. VIII, § 1; 51 O.S. 2001 Supp. 2008, §§ 91— 105; 51 O.S. 2001, §§ 51— 71; 22 O.S. 2001, §§ 1181— 1196; 51 O.S. 2001, § 24.1[51-24.1].
W.A. DREW EDMONDSON Oklahoma Attorney General
SANDRA D. RINEHART Senior Assistant Attorney General
[1] Under these statutes, state officials who treat as lawful a contract which is constitutionally infirm will not be held liable if they act "in conformity with an opinion of the Attorney General that the contract was lawful." State ex rel. Fent v. State ex rel. Okla. WaterRes. Bd., 66 P.3d 432, 442 (Okla. 2003).
[2] The question of what constitutes discovery for purposes of the statute of limitations where discovery is a factor is a factual one. InSmith v. Baptist Foundation, 50 P.3d 1132, 1137-38 (Okla. 2002), the Supreme Court stated, "[t]he discovery rule allows the limitation period in certain tort cases to be tolled until the fraud is discovered or until the date the defrauded party, by the exercise of ordinary diligence, might have recognized the deception." The court stated, "[t]he question of when fraud is discovered or should have been unearthed with the exercise of ordinary diligence is one of fact dependent on the surrounding circumstances, the relationship of the parties, and all other elements peculiar to the cause." Id. at 1138. As this question is fact specific, we cannot, in an Attorney General's Opinion, state how the provisions would be applied in a specific situation. See 74 O.S. 2001, § 18b[74-18b](A)(5) (Attorney General Opinions address questions of law). We can state, however, that while fraud is generally deemed to be discovered when in the exercise of reasonable diligence it could have been discovered, there is a caveat in certain circumstances. Brown v. W.M. Acree Trust, 999 P.2d 1119, 1121 (Okla.Civ.App. 2000). "The means of discovering the fraud must be in the hands of the party being defrauded and the defrauding party must not have covered up his fraud to the extent it would be difficult or impossible to discover." Id. Under this reasoning, if a state agency is being defrauded, the means of discovering the fraud must be in the hands of the appropriate state official. The appropriate official is charged with exercising due diligence to discover the fraud.
[3] This supplemental oath was not made cumulative to the constitutional oath until November 1, 2004. 2004 Okla. Sess. Laws ch. 408, § 1. See Stipe v. State ex rel. Bd. of Tr., 188 P.3d 120, 124 (Okla. 2008) (statutory oath found inapplicable to acts committed prior to November 1, 2004). *Page 1