2011 OK 57

**TULSA INDUSTRIAL AUTHORITY, an Oklahoma Public Trust, Plaintiff/Appellee,**

v.

**CITY OF TULSA, Oklahoma, and Tulsa Hills, L.L.C., Defendants/Appellees.**

State of Oklahoma, ex rel. J. Clark Bundren, M.D., a resident taxpayer of the City of Tulsa, State of Oklahoma, Intervenor/Appellant.

No. 105,460.

Supreme Court of Oklahoma.

June 21, 2011.

Rehearing Denied Feb. 6, 2012.

J. Douglas Mann, Jerry A. Richardson, Rosenstein, Fist & Ringold, Tulsa, Oklahoma, for Appellee Tulsa Industrial Authority.

Deidre O. Dexter, Patrick T. Bolden, Tulsa, OK, for Appellee City of Tulsa.

Lewis N. Carter, Michael S. Hall, Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa, OK, for Appellee Tulsa Hills, L.L.C.

Larry R. Steidley, Jr., Claremore, OK, and Terry Guy Shipley, Norman, OK, for Appellant.

EDMONDSON, J.

¶ 1 Two issues are presented in this appeal. The first is whether a taxpayer should have been allowed to intervene in a District Court proceeding that was brought to obtain a declaratory judgment stating that certain public expenditures and financing were lawful. A portion of this first issue involves whether a *qui tam* action may be brought on behalf of a public trust and against its officers. The second is whether this appeal is moot because the parties proceeded to obtain a declaratory judgment in the District Court after Taxpayer was not allowed to intervene. We address the second issue first because Appellees' claim for mootness would make unnecessary a decision on the first issue if they are correct, and because the mootness issue involves the same issue for both a mootness analysis and a determination whether a *qui tam* plaintiff should be allowed to intervene in a *qui tam* proceeding.

¶ 2 Tulsa Hills, L.L.C., (THL) sought to create a shopping center in Tulsa, Oklahoma. The City of Tulsa (or City) established a Tax Increment District, 62 O.S.2001 § 861, and accompanying project plan pursuant to the Local Development Act, 62 O.S.2001 §§ 850–869. This plan included the site for the Tulsa Hills Shopping Center created by THL. THL sought the City's assistance to finance "infrastructure improvements" at the Tulsa Hills Shopping Center. The improvements included drainage for rain, a public road, a sanitary sewer mainline, a water line, and road improvements in and adjacent to the property. The City Council for Tulsa authorized the Tulsa Industrial Authority (or TIA) to issue and sell tax apportionment bonds totaling 18.5 million dollars, 13.5 million of the proceeds to be transferred to THL.

¶ 3 Taxpayer argued that ad valorem and sales taxes attributed to a tax increment district would be used to pay for bonds which had been issued by a public trust to provide money to a developer building a retail outlet. Taxpayer alleged that from the $18,500,000.00 obtained from the bonds, $13,500,000.00 would be given to the developer. The developer would use those funds for: (1) on the developer's property, site leveling,

streets connecting to existing streets, storm water drainage for the shopping center, sanitary sewer and water extensions to the shopping center (for a total of $11,214,000.00); (2) unspecified off-site improvements (for a total of $561,000,00.); and (3) "contingencies" (for a total of $1,725,000.00). Taxpayer alleged that in order to get the Jenks school District to agree that the incremental ad valorem taxes attributed to the new shopping mall could be used for payment of the bonds, TIA and the City and the developer agreed to pay $765,000.00 to the school district from the proceeds obtained from the sale of the bonds. Taxpayer alleged that approximately $4,235,000.00 was used for reserves for debt service, underwriters and financial advisors fees, insurance and other borrowing costs.

¶ 4 Several taxpayers served a written demand on the TIA and the City of Tulsa pursuant to 62 O.S.2001 §§ 372, 373, and alleged that the money transferred to THL violated the Oklahoma Public Trust Act, 60 O.S.Supp.2007 § 178.4 and Art. 10 § 19 of the Oklahoma Constitution. Taxpayers claimed that § 178.4 prohibited a public trust from participating in a retail outlet, and that Art. 10 § 19 prohibited tax proceeds for a purpose other than that authorized by the voters. Taxpayers demanded that TIA and the City of Tulsa bring suit to recover the money transferred to THL.

¶ 5 TIA responded to Taxpayers' demand by filing an action in the District Court for Tulsa County against the City of Tulsa and THL, requesting a declaratory judgment affirming the legality and constitutionality of the project plan. THL and City filed answers supporting TIA's claims and request for a declaratory judgment. TIA filed a motion for summary judgment seeking "a declaratory judgment confirming the validity of the creation and financing of the Tulsa Hills Increment District in all respects."

¶ 6 Bundren, a taxpayer (Taxpayer), sought to intervene in the declaratory judgment action. TIA, THL, and City filed objections to the request to Intervene. The trial court denied Taxpayer's motion to intervene, and a few days later the court granted and memorialized TIA's request for summary judgment. A few days after granting

summary judgment the trial court memorialized its denial of Taxpayer's motion to intervene. Taxpayer filed in the District Court two petitions to vacate the judgment. Taxpayer appealed. The Court of Civil Appeals, with one judge dissenting, dismissed the appeal because Taxpayer did not seek to stay the trial court proceedings during Taxpayer's appeal. Taxpayer sought certiorari for review of the appellate court's decision and the issues in the appeal left unaddressed.

## I. Motions to Dismiss and *Qui Tam* Relief

¶ 7 THL, City of Tulsa, and TIA filed motions to dismiss Taxpayer's appeal. They argued that the summary judgment granted to the parties decided the legality of the conduct of the City of Tulsa, and that this decision made Taxpayer's claims moot. They argued that: (1) Taxpayer did not seek a stay of the trial court proceeding during the appeal; (2) The claims presented in the declaratory judgment proceeding were merged into a judgment during the appeal; and (3) Due to the judgment on all claims (or causes of action), no claim remains pending in the trial court for the Taxpayer to intervene as a party and present the Taxpayer's interest in the litigation.

¶ 8 Taxpayer asserted that the appeal is not moot because his status as a non-party to the summary judgment process denied to him the authority to appeal the order granting summary judgment, and that as a non-party the judgment is not binding on him. He also argued that if allowed to intervene he will seek vacation of the judgment, and that he has already filed a petition to vacate in the District Court.

¶ 9 Appellees' analysis focused on whether Taxpayer was a party in the trial court proceeding and could thus obtain a stay of the trial court proceeding pursuant to 12 O.S.Supp.2008 § 990.4. That section states that "... a *party* may obtain a stay of the enforcement of a judgment, decree or final order: ... 3. While an appeal is pending in any court in or outside of this state." *Id.* at 990.4(A). Appellees also argued that a stay of the trial court proceeding pending an appeal is within this Court's supervisory writ

jurisdiction, and thus was an available remedy for Taxpayer. Because we hold herein that the failure to seek a stay did not moot the appeal, we need not analyze Taxpayer's available remedies for a stay.

¶ 10 The statutory authorization for taxpayers to seek a *qui tam* remedy occurs after they make their *qui tam* demand to the public body and the public body fails to seek recovery of the money or property unlawfully paid. 62 O.S.2001 § 373.[1] What if the public body does *not* seek recovery of the money but files a declaratory judgment proceeding to judicially validate its expenditure of the public's money?[2] Is this litigation conduct a § 373 failure to "institute or diligently prosecute ... for the recovery of any money?" In *City of Oklahoma City v. Oklahoma City Urban Renewal Authority*, we did not address the issue as a § 373 failure, but relied upon opinions from courts in Wyoming, Idaho, and New Jersey, and concluded that a

public body's request for declaratory judgment seeking judicial validation of its actions could, *in some circumstances*, be a justiciable controversy.[3]

¶ 11 When is a public body's request for declaratory judgment a justiciable controversy? We indicated that justiciability was shown by the antagonistic claims (fact and law) presented by the public body, and this justiciability also demonstrated that the *qui tam* taxpayer did not possess a right to intervene in a proceeding and seek § 373 relief.[4] The public body must raise the claims of the *qui tam* taxpayers by its petition seeking declaratory relief, and it must subsequently place those material facts and law before the trial court for adjudication.[5] This result is required because: (1) The plain words of the statute (§ 373) are deemed to express legislative intent in the absence of any ambiguity in language;[6] (2) The plain

---

1. 62 O.S.2001 § 373 states in pertinent part with material omitted and emphasis and explanation added:

   2. "**Upon the refusal, failure, or neglect** of the proper officers of the state or of any county, township, city, town, or school district, ... after written demand signed, verified and served upon them by ten resident taxpayers of the state or such county, township, city, ... **to institute or diligently prosecute** proper proceedings at law or in equity **for the recovery of any money or property** belonging to the state, or such county, township, city, town, or school district, ... paid out or transferred by any officer thereof in pursuance of any unauthorized, unlawful, fraudulent, or void contract made, or attempted to be made by any of its officers ... or for the penalty provided in the preceding section [62 O.S. § 372], **any resident taxpayer** of the state, or such county, township, city ... **may in the name of the State of Oklahoma as plaintiff, institute and maintain any proper action which the proper officers of the State, county, township, city, town, or school district might institute and maintain for the recovery of such property, or for said penalty...**"

   The 2001 version of § 373 was in effect at the time this controversy occurred. Section 373 was amended by 2011 Okla. Sess. Laws. Ch. 73 § 1 (eff. Nov. 1, 2011). The parties did not address the effect of the 2011 amendment, and we decline to engage in *sua sponte* analysis of the legal issues presented by the amendment.

2. Our recent opinions involving a public body seeking a declaratory judgment to judicially validate its actions after receiving a *qui tam* demand include *City of Broken Arrow, Oklahoma v. Bass Pro Outdoor World, LLC, et al.*, 2011 OK 1, 250 P.3d 305; *State ex rel. Oklahoma Corp. Comm. v. McPherson*, 2010 OK 31, 232 P.3d 458; *State ex*

*rel. Wright v. Oklahoma Corporation Commission*, 2007 OK 73, 170 P.3d 1024; and the *Tal* cases. The "*Tal* cases" refers to: *City of Oklahoma City v. Oklahoma City Urban Renewal Authority*, 1999 OK 71, 988 P.2d 901 (*Tal I*); *State ex rel. Tal v. Norick*, 1999 OK 85, 991 P.2d 999 (*Tal II*); *State ex rel. Moshe Tal. v. City of Oklahoma City*, 2000 OK 70, 19 P.3d 268, *cert. denied*, 534 U.S. 814, 122 S.Ct. 40, 151 L.Ed.2d 13 (2001) (*Tal III*); *State ex rel. Moshe Tal v. City of Oklahoma City*, 2002 OK 97, 61 P.3d 234, (*Tal IV*); *Oklahoma City Urban Renewal Authority v. City of Oklahoma City*, 2005 OK 2, 110 P.3d 550 (*Tal V*). One opinion involving a matter related to the *Tal* cases and addressed by our Court of Civil Appeals was released for publication by Order of the Supreme Court: *Burkett v. Tal*, 2004 OK CIV APP 57, 94 P.3d 114.

3. *City of Oklahoma City*, 1999 OK 71, ¶¶ 25–28, 988 P.2d 901, 907. *See also State ex rel. Wright v. Oklahoma Corporation Commission*, 2007 OK 73, ¶ 36, 170 P.3d 1024, 1036.

4. *City of Oklahoma City*, 1999 OK 71, ¶ 28, 988 P.2d at 907.

5. *City of Broken Arrow, Oklahoma v. Bass Pro Outdoor World, LLC, et al.*, 2011 OK 1, ¶ 16, 250 P.3d 305; *State ex rel. Wright v. Oklahoma Corporation Commission*, 2007 OK 73, ¶¶ 58, 61, 170 P.3d 1024, 1041, 1042; *State ex rel. Oklahoma Corporation Commission v. McPherson*, 2010 OK 31, ¶¶ 25–26, 232 P.3d 458, 464–465.

6. If wording in a statute is plain, clear and unambiguous then the plain meaning of the words used must be judicially accepted as ex-

words of § 373 state that a *qui tam* plaintiff's right to seek that remedy is *conditioned* upon the failure of the officers of a public body "to institute *or diligently prosecute* proper proceedings at law or in equity *for the recovery* of any money or property belonging to the state," and (3) Even if judicial construction could be applied to the *qui tam* statute (§ 373), a strict construction thereof would be applied requiring strict or literal compliance with the language in § 373 *by the public body and any person acting on behalf of the public body;*[7] and a strict construction would be equated with a "literal" meaning of the words used in the statute.[8] Our use of a justiciability test in the *Tal* cases and our more recent opinions satisfies one element of a controversy where § 373 relief is sought: Whether the public body diligently prosecuted a proper proceeding at law or in equity for the recovery of any money or property. The use of the justiciability test is thus a correct method for determining the propriety of *qui tam* taxpayers' efforts to intervene in a public body's quest for declaratory relief.[9]

¶ 12 In the context of *qui tam* declaratory judgment proceedings we have explained that the declaratory judgment proceeding brought by the officials was "a justiciable case" where the issues presented "were legitimate, not feigned or collusive."[10] We have contrasted a "justiciable

pressing the intent of the Legislature, and there exists no reason or justification to use interpretive devices or application of rules of construction to determine meaning. *In re Adoption of Baby Boy A*, 2010 OK 39, n. 7, 236 P.3d 116, 123; *Lang v. Erlanger Tubular Corp.*, 2009 OK 17, ¶ 8, 206 P.3d 589, 591; *City of Midwest City v. House of Realty, Inc.*, 2008 OK 28, n. 38, 198 P.3d 886, 898; *Tyler v. Shelter Mut. Ins. Co.*, 2008 OK 9, n. 1, 184 P.3d 496; *Strong v. State ex rel. The Oklahoma Police Pension and Retirement Bd.*, 2005 OK 45, ¶ 8, 115 P.3d 889, 893; *Pentagon Academy, Inc. v. Independent School Dist. No.1, Tulsa, Cnty.*, 2003 OK 98, ¶ 19, 82 P.3d 587, 591; *Johnson v. City of Woodward*, 2001 OK 85, ¶ 6, 38 P.3d 218, 222.

7. *Generally, qui tam* statutes are strictly construed. *State ex rel. Hettel v. Security National Bank & Trust Co. in Duncan*, 1996 OK 53, 922 P.2d 600, 606 ("The *qui tam* statutes, like any penal statutes, are strictly construed."); *See also State ex rel. Henricksen v. Corporation Commission*, 2001 OK 89, ¶¶ 7–9, 37 P.3d 835, 838–839. *Generally*, a *qui tam* statute is described as penal in nature. *Sudbury v. Deterding*, 2001 OK 10, ¶¶ 11–17, 19 P.3d 856, 858–860; *Tulsa Ready-Mix Concrete Co. v. McMichael Concrete Co.*, 1972 OK 53, 495 P.2d 1279, 1281. However, § 373 is penal in nature only with respect to the party from whom the funds or property is sought to be recovered. *See, e.g., Houck v. Hold Oil Corp.*, 1993 OK 167, 867 P.2d 451, 459 (strict construction of a penal statute means, in part, that the situations subjecting an individual to the statutory penalty should not be enlarged by judicial construction). Thus, the Court has explained that this type of action is strictly construed in behalf of the alleged wrongdoer by requiring strict compliance by the public body, or a person acting on behalf of a public body, where liability penal in nature is sought to be imposed on an alleged wrongdoer. *State ex rel. Mitchell v. City of Shawnee*, 1934 OK 203, 31 P.2d 552, 557 ("Actions of this nature must be strictly and rigidly construed in behalf of the

wrongdoer"). *See also, McCabe v. Duran*, 39 Kan.App.2d 450, 180 P.3d 1098, 1100; *American Promotional Events, Inc. v. Blumenthal*, 285 Conn. 192, 937 A.2d 1184, 1193 (2008); *People v. Carillo*, 42 Misc.2d 74, 246 N.Y.S.2d 692 (1964); *Commissioner v. Acker*, 361 U.S. 87, 91, 80 S.Ct. 144, 147, 4 L.Ed.2d 127 (1959); *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37 (1820).

8. A strict construction is equated with using a literal construction or literal meaning of the words in a statute. *See, e.g., State ex rel. Rucker v. Tapp*, 1963 OK 37, 380 P.2d 260, 264; *In re Benson*, 1936 OK 704, 62 P.2d 962, 963–964; *Hollis v. Adams Gin Co.*, 1925 OK 867, 241 P. 744, 745; *Norris v. Cross*, 1909 OK 316, 105 P. 1000, 1005–1006.

9. *Tal V* and the other *Tal* cases (*see* n. 2, *supra*) are also consistent with *State, Bd. Com'rs Pontotoc Cnty. ex rel. Braly v. Ford*, 1941 OK 270, 116 P.2d 988, 990, and its explanation that a public body's failure to institute or prosecute an action for the recovery of the public funds "is a condition precedent to the taxpayer's right to institute a suit," and it is only upon the public body's failure that the *qui tam* taxpayer acquires an interest in the subject matter of the litigation. The *Tal* opinions as well as the post–*Tal qui tam* opinions are consistent with the principle that a party seeking declaratory relief is seeking a type of remedy, and that remedy does not enlarge the jurisdiction of the court in which it is sought. *See Conoco, Inc. v. State Dept. of Health of State of Okl.*, 1982 OK 94, 651 P.2d 125, 131–132 (Declaratory Judgments Act does not extend the court's jurisdiction).

10. *City of Oklahoma City v. Oklahoma City Urban Renewal Auth.*, 1999 OK 71, ¶ 29, 988 P.2d 901, 907. A consent judgment is an appropriate procedure for the adjudication of the settlement of a *justiciable controversy. Skrapka v. Bonner*, 2008

controversy," which presents antagonistic material facts and law to the trial court by pleading and evidence, with a request for a prohibited advisory opinion.[11]   The fact that all parties to the declaratory judgment proceeding sought court approval of the actions taken by the officials "did not deprive the declaratory judgment proceeding of its justiciable character when the issues presented were not feigned or collusive by those seeking to uphold the public contracts."[12]   While officials need not forensically adopt each and every argument of the *qui tam* taxpayer,[13] they must fairly present the material facts and law to the trial court for adjudication, making more than a "half-hearted attempt."[14]   They are not required to present unsupported factual conclusions made by the *qui tam* taxpayers.[15]   A *qui tam* taxpayer's *qui tam* interest in the litigation, and intervention therein, is contingent upon the public body presenting a controversy that is not justiciable, that is feigned or collusive, and we

have explained that the burden is upon the taxpayer to show that such interest exists.[16]

■   ¶ 13 The term "justiciable" refers to a lively case or controversy between antagonistic demands.[17]   When a party presents for adjudication antagonistic demands that are merely speculative, a prohibited advisory opinion is being requested.[18]   Likewise, when only non-antagonistic demands are presented, there is no "controversy" and an advisory opinion is being sought.[19]   In 1964, when explaining that declaratory relief is limited, to "cases of actual controversy," we referred to this as a *jurisdictional* component.   We relied upon opinions from several jurisdictions for that concept, quoted with approval an opinion describing justiciability as necessary "in order to invoke the jurisdiction of the court," and ultimately concluded that the party's trial court petition "was insufficient to invoke the jurisdiction of the court under the

OK 30, ¶ 11, 187 P.3d 202, 208.  The proceeding herein does not involve a consent judgment.

11.   *State ex rel. Wright v. Oklahoma Corporation Commission*, 2007 OK 73, ¶ 44, 170 P.3d 1024, 1038.

12.   *State ex rel. Wright v. Oklahoma Corporation Commission*, 2007 OK 73, ¶ 30, 170 P.3d 1024, 1035.   *See also State ex rel. Oklahoma Corp. Comm. v. McPherson*, 2010 OK 31, ¶¶ 16, 25, 232 P.3d 458, 463, 464–465; *City of Broken Arrow, Oklahoma v. Bass Pro Outdoor World, LLC, et al.*, 2011 OK 1, ¶ 13, 250 P.3d 305.

13.   *State ex rel. Wright v. Oklahoma Corporation Commission*, 2007 OK 73, ¶ 39, 170 P.3d 1024, 1037.

14.   *State ex rel. Moshe Tal v. City of Oklahoma City*, 2002 OK 97, ¶ 22, 61 P.3d 234, 246 ("our cases also seem to make plain that a half-hearted effort on the part of public officials in pursuit of an action following a *qui tam* written demand does not suffice to cut off the taxpayer right to pursue an action in their own right.").

15.   *State ex rel. Oklahoma Corp. Comm. v. McPherson*, 2010 OK 31, ¶ 16, 232 P.3d 458, 463, citing, *Tal I*, 1999 OK 71, ¶¶ 17–22, 988 P.2d at 906; *Tal II*, 1999 OK 85, at ¶¶ 8–9, 991 P.2d at 1001; *Tal IV*, 2002 OK 97, ¶ 8, 61 P.3d 234.  *See also City of Broken Arrow, Oklahoma v. Bass Pro Outdoor World, LLC, et al.*, 2011 OK 1, ¶¶ 31, 32, 250 P.3d 305.

16.   The burden of the taxpayer on intervention *is to show the inadequacy of the presentation of the controversy to the court by the public body.   City of Broken Arrow, Oklahoma v. Bass Pro Outdoor World, LLC, et al.*, 2011 OK 1, ¶ 25, 250 P.3d 305.   *See also City of Oklahoma City v. Oklahoma City Urban Renewal Authority*, 1999 OK 71, ¶ 29, 988 P.2d 901, 907 ("The burden was T.A.R. to prove that the matter was non-justiciable and it did not do so.").

17.   *House of Realty, Inc. v. City of Midwest City*, 2004 OK 97, ¶ 12, 109 P.3d 314, 318, *citing, City of Oklahoma City v. Oklahoma City Urban Renewal Authority*, 1999 OK 71, ¶ 28, 988 P.2d 901, 907; *Ethics Commission v. Cullison*, 1993 OK 37, 850 P.2d 1069, 1073; *Lawrence v. Cleveland County Home Loan Authority*, 1981 OK 28, 626 P.2d 314, 315.

18.   *State ex rel. Oklahoma Capitol Imp. Authority v. E.A. Cowen Const. Co.*, 1974 OK 4, 518 P.2d 1264, 1266; *Post Oak Oil Co. v. Stack & Barnes, P.C.*, 1996 OK 23, 913 P.2d 1311, 1314.

19.   In this declaratory judgment proceeding we need not analyze those opinions concerning the Court's exercise of original jurisdiction conferred by statute to hear protests to proposed public bonds or the Court's approval of such bonds by an opinion that is advisory in nature.   *See, e.g., In re Application of Oklahoma Department of Transportation*, 2003 OK 105, n. 21, 82 P.3d 1000, 1007 (citing *Application of Fun Country Development Authority*, 1977 OK 138, ¶ 3, 566 P.2d 1167).

declaratory judgments act."[20] Since that time the Court has frequently discussed the "jurisdiction" or "power" of the trial court invoked by a party seeking declaratory judgment relief.[21] We have explained that the absence of justiciability requires dismissal of the proceeding.[22] We have thus linked the concept of justiciability when declaratory relief is sought with the jurisdiction of the trial court to grant such relief.

¶ 14 *In summary*, a *qui tam* taxpayer's § 373 right to intervene is based upon a public body's failure to seek recovery of the public funds at issue as specified in § 373. A public body's right to prevent intervention of the *qui tam* taxpayer in its declaratory judgment proceeding is based upon its diligent prosecution therein of the *qui tam* taxpayer's claim of illegality. Diligent prosecution of the *qui tam* taxpayer's claim of illegality requires the public body to plead and present for adjudication the merits of the taxpayer's claim when the public body also seeks to judicially validate its expenditure of public funds. When the public body seeks to judicially validate its expenditure of public funds, its simultaneous presentation of the *qui tam* taxpayer's claim makes the controversy justiciable and within the jurisdiction of the Declaratory Judgments Act. If the public body seeks to validate its contested expenditures and presents only non-antagonistic claims, then its forensic conduct possesses the quality of non-justiciability by presenting feigned or collusive issues for adjudication, and a *qui tam* intervenor is allowed to intervene and press for *qui tam* relief via antagonistic claims that make the controversy justiciable.

¶ 15 Appellees filed motions to dismiss Taxpayer's appeal for mootness. The concept of mootness is most often linked to circumstances that result in a court's inability to grant effective relief by its appellate opinion in the controversy because it would possess characteristics of a hypothetical or advisory opinion.[23] The argument advanced is that an opinion on whether Taxpayer should have been allowed to intervene would now possess the quality of an advisory opinion because the trial court granted declaratory relief and that judgment is allegedly enforceable against Taxpayer.

¶ 16 Clearly, if a public body's declaratory judgment controversy is justiciable, a *qui tam* taxpayer is not entitled to intervene, has no right of action pursuant to § 373,[24]

---

20. *Gordon v. Followell*, 1964 OK 74, 391 P.2d 242, 243–244, quoting *Kahin v. Lewis*, 42 Wash.2d 897, 259 P.2d 420 (1953). Similar language with reliance upon *Gordon v. Followell*, *supra*, and *Kahin v. Lewis*, *supra*, was used in *Mistletoe Express Service v. United Parcel Service, Inc.*, 1983 OK 27, 674 P.2d 1, 10.

21. *See, e.g., Arbuckle Abstract Co. v. Scott*, 1998 OK 125, ¶¶ 20–21, 975 P.2d 879, 888 (There was no actual, existing controversy between the parties "sufficient to invoke jurisdiction" under the Declaratory Judgments Act.); *Muskogee Fair Haven Manor Phase I, Inc. v. Scott*, 1998 OK 26, 957 P.2d 107 (Court held that due to adequate and exclusive legislatively prescribed judicial remedies afforded to taxpayers the district court lacked subject matter jurisdiction to entertain their declaratory judgment action.); *Chrysler Corp. v. Clark*, 1987 OK 32, ¶¶ 2, 8, 737 P.2d 109, 110, 111 (where the Court stated that when determining whether trial court's "jurisdiction" was invoked for declaratory judgment the Court must examine the common four elements that are used to describe justiciability.); *Tulsa Tribune Co. v. Oklahoma Horse Racing Commission*, 1986 OK 24, 735 P.2d 548, 553 (Court stated that no real controversy existed "so as to empower the district court to act under the Uniform Declaratory Judgments Act."); *Tulsa Indus. Auth. v.*

*State*, 1983 OK 99, 672 P.2d 299, 301 (four elements of justiciability are listed, and the Court stated that "The Declaratory Judgments Act, 12 O.S.1981, § 1651 invests the district courts with jurisdiction, in cases of actual controversy, to determine the construction or validity of any statute").

22. *Arbuckle Abstract Co. v. Scott*, 1998 OK 125, ¶¶ 20–22, 975 P.2d 879, 888 (when no justiciable controversy exists, a petition seeking declaratory relief should be dismissed.).

23. *Chandler U.S.A., Inc. v. Tyree*, 2004 OK 16, ¶ 12, 87 P.3d 598, 601, citing *Westinghouse Elec. Corp. v. Grand River Dam Authority*, 1986 OK 20, 720 P.2d 713, 720; *Rogers v. Excise Bd. of Greer County*, 1984 OK 95, 701 P.2d 754, 761.

24. In a strict sense, a "right of action" refers to a right to a remedy, usually a particular remedy, and its use to secure relief by judicial procedure, and is thus distinguished from a "cause of action." *Cruse v. Bd. of Cnty. Comr's of Atoka Cnty.*, 1995 OK 143, n. 34, 910 P.2d 998, 1004; *Landry v. Acme Flour Mills Co.*, 1949 OK 170, 211 P.2d 512, 515. See also *Roberts v. Merrill*, 1963 OK 250, 386 P.2d 780, 785–786 ("The

and has no standing *as a qui tam taxpayer* to challenge a judgment on the merits of the justiciable controversy.[25]  However, if the trial court lacks justiciability because of a collusive or fraudulent controversy, a jurisdictional issue is presented.[26]  Our appellate opinions indicate that when a *qui tam* taxpayer is held entitled to § 373 intervention in the public body's declaratory judgment case, this holding *also necessarily determines* that the controversy possesses the characteristics of a collusive or fraudulent proceeding (a § 373 failure to diligently prosecute for the recovery of the public's funds has occurred) and the proceeding lacks justiciability.  The mootness argument herein thus becomes one stating that:  A judgment in a controversy which is allegedly non-justiciable due to a collusive or fraudulent legal proceeding on the legality of the expenditure of public funds should be enforced against a non-party taxpayer *without judicial enquiry as to the fraudulent or collusive nature of the proceeding* because the non-party failed to seek a stay to prevent the public body from obtaining the collusive or fraudulent judgment while non-party's appeal was pending.

¶ 17  No citation to authority should be needed for the principle that it is against public policy for courts of this State to be used to create a collusive or fraudulent judgment authorizing the expenditure of public funds.  In 1931, this Court declined to ap-

prove a collusive legal proceeding for an expenditure from the public purse.[27]  The mootness question before us today occurs in the context of an appeal from a proceeding in which the judgment occurred during the appeal from the proceeding in which the alleged collusive judgment occurred.[28]  Since the adjudication on the *qui tam* intervention issue also necessarily adjudicates the justiciability and alleged collusive nature of a proceeding that involves a judgment justifying an allegedly unlawful public expenditure, we hold that the issue of Taxpayer's *qui tam* intervention is not moot and an appellate decision herein will not be in the nature of a prohibited advisory opinion as to the *qui tam* intervention.  The motions to dismiss the appeal for mootness are denied as to the Taxpayer's requested *qui tam* relief.

## II.  *Qui Tam* Relief and Public Trusts; An Equitable Relief Claim;  Mootness and Intervention

¶ 18  The *usual* dispositive issue on appeal of a trial court's order denying intervention to a *qui tam* taxpayer is not the merits of whether the public expenditures were lawful, but whether the public body fairly presented the *qui tam* taxpayer's claims to the trial court as part of a justiciable controversy.[29]  TIA argued that a preliminary issue be resolved:  whether a *qui tam* statutory remedy is permissible when brought on behalf of a public trust.  The record supports TIA's

---

'right of action'—a term far from synonymous with 'cause of action'—means the right to effectively pursue an available remedy in a suitable forum, whether successfully or not.").

**25.**  *State ex rel. Moshe Tal v. City of Oklahoma City*, 2002 OK 97, ¶ 9, 61 P.3d 234, 241 ("*Tal I* also, in effect, ruled that because taxpayers were properly denied intervention they were excluded as party litigants and had no standing to tender for our review in that appeal any errors that may have been made in the judgment upholding the Agreements as lawful.").  *See also City of Broken Arrow, Oklahoma v. Bass Pro Outdoor World, LLC, et al.*, 2011 OK 1, ¶ 30, 250 P.3d 305.

**26.**  A judgment procured by fraud or collusion is *not* the same thing as a judgment lacking a jurisdictional component.  *See, e.g., Shawnee Peanut Co. v. Barkus*, 1951 OK 244, 247 P.2d 875, 881 (the question of fraud practiced by a party in obtaining a judgment presents a non-jurisdictional question).

**27.**  *Protest of Carter Oil Company*, 1931 OK 15, 296 P. 485.

**28.**  An appeal is a continuation of the trial court proceeding.  *GRP of Texas, Inc. v. Eateries, Inc.*, 2001 OK 53, ¶ 8, 27 P.3d 95, 98;  *Grider v. USX Corp.*, 1993 OK 13, 847 P.2d 779, 786;  *Mabee Oil & Gas Co. v. Price*, 1947 OK 81, 179 P.2d 916, 918.  *See also In re Baby Girl L.*, 2002 OK 9, ¶ 48, 51 P.3d 544;  *Woods v. Chicago, R.I. & P. Ry. Co.*, 1928 OK 62, 129 Okla. 91, 263 P. 446, 447.

**29.**  *City of Broken Arrow, Oklahoma v. Bass Pro Outdoor World, LLC, et al.*, 2011 OK 1, ¶ 32, 250 P.3d 305.  *See also State ex rel. Moshe Tal v. City of Oklahoma City*, 2002 OK 97, ¶ 9, 61 P.3d 234, 241 (explained that in *Tal I* the contractual expenditures were discussed but their lawfulness was not determined by the appellate court because no party appealed from the judgment making that determination).

statement that it is a public trust created pursuant to 60 O.S. § 176.[30]

¶ 19 TIA argued that: (1) 62 O.S. 373 authorizes a *qui tam* remedy brought to maintain an action that "officers of the State, county, township, city, town, or school district" might maintain to recover public property; (2) Because § 373 is penal in nature and must be strictly construed, a *qui tam* remedy may be sought only on behalf of those entities expressly designated by § 373; (3) TIA is a public trust, and a public trust and its trustees are not listed in § 373; (4) Consequently, a *qui tam* remedy may not be sought on behalf of a public trust; and (5) The trial court correctly denied Taxpayer's motion to intervene.

■ ¶ 20 The § 373 *qui tam* action is not a "cause of action," but a statutory remedy for recovery of a penalty for the commission or omission by a public official of a certain act based upon particular transactions or occurrences.[31] The remedy is sought by a private individual *on behalf of a public body*.[32] Section 373 is a remedy sought where "the proper officers of the state or of any county, township, city, town, or school district" have declined to seek recovery of public property after receiving notice of its alleged unlawful transfer, and a demand for its recovery has been made. Officers of a public body may be liable when a *qui tam* remedy is sought, and those officers are identified as officers "of the state and of any county, township, city, town or school district." 62 O.S.2001 § 372.[33] No express mention is made of a public trust and its officers, and the plain language of both § 372 and § 373 is unambiguous as to the identity of the officers mentioned.[34] Even if rules of judicial construction were used to identify the officers subject to liability, those rules could not be used to expand the class of individuals subject to liability in a proceeding that is penal in nature.[35] We note that this result is consistent with language in 60 O.S. 2001 § 179 which states that no trustee of a

30. The appellate record shows that the Tulsa Industrial Authority was created on March 7, 1969 for the use and benefit of the City of Tulsa, Oklahoma, under the authority of and pursuant to the provisions of Title 60, Sections 176 *et seq.* (The Public Trust Act). Resolution of the City of Tulsa, No. 7354, O.R. at 527; City's Response to Motion for Summary Judgment, O.R. at 717 (noting date of creation of TIA, and subsequent amendments to the Trust Indenture, citing O.R. at 540 and following).

31. *Oklahoma City Urban Renewal Authority v. City of Oklahoma City*, 2005 OK 2, n. 30, 110 P.3d 550, 559.

32. *State ex rel. Wright v. Oklahoma Corporation Commission*, 2007 OK 73, ¶ 17, 170 P.3d 1024, 1030–1031; *State ex rel. Fent v. State ex rel. Oklahoma Water Resources Board*, 2003 OK 29, n. 19, 66 P.3d 432, 438; *State ex rel. Hettel v. Security National Bank & Trust Co. in Duncan*, 1996 OK 53, n. 1, 922 P.2d 600, 602; *State ex rel. Trimble v. City of Moore*, 1991 OK 97, 818 P.2d 889, 894.

33. 62 O.S.2001 § 372 provided:
"Every officer of the state and of any county, township, city, town or school district, who shall hereafter order or direct the payment of any money or transfer of any property belonging to the state or to such county, city, town or school district, in settlement of any claim known to such officers to be fraudulent or void; or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement made or attempted to be made, for the state or any such county, city, town or school district, by any officer thereof, and every person, having notice of the facts, with whom such unauthorized, unlawful or fraudulent contract shall have been made, or to whom, or for whose benefit such money shall be paid or such transfer of property shall be made, shall be jointly and severally liable in damage to all innocent persons in any manner injured thereby, and shall be furthermore jointly and severally liable to the state, county, city, town or school district affected, for triple the amount of all such sums of money so paid, and triple the value of property so transferred, as a penalty, to be recovered at the suit of the proper officers of the state or such county, city, town or school district, or of any resident taxpayer thereof, as hereinafter provided."
The 2001 version of § 372 was in effect at the time this controversy occurred. Section 372 was amended by 2008 Okla. Sess. Laws Ch. 367, § 8 (eff. Nov. 1, 2008), and by 2011 Okla. Sess. Laws. Ch. 73 § 1 (eff. Nov. 1, 2011). The parties did not address the effect of the 2008 amendment, and we decline to engage in *sua sponte* analysis of the legal issues presented by the amendment.

34. 2011 Okla. Sess. Law Ch. 73 (S.B. No. 331) (eff. Nov. 1, 2011), amends both § 372 and 373 of Title 62, and the amendment does not add public trusts or trustees to the list of public bodies specified therein.

35. See discussion with accompanying notes 6–8 *supra*.

public trust shall be charged with personal liability "by reason of any act or omission committed or suffered in the performance of such trust or in the operation of the trust property." [36]

¶ 21 Title 60 § 176.1 states that a public trust "created in accordance with the provisions of Section 176 et seq. of this title shall be presumed for all purposes of Oklahoma Law to: ... 2. Exist as a legal entity separate and distinct from the settlor and from the governmental entity that is its beneficiary." 60 O.S.Supp.2003 § 176.1. In some circumstances a public trust may be deemed to be an alter ego of the public body for which it seeks to benefit, and equity may be used to disregard the trust's legal status as a distinct legal entity.[37] This Court "is mindful that a public trust may be declared to be 'illusory' upon a judicial finding of a sham fabricated by one to circumvent one's obligations." [38] But no suggestion is made herein that TIA is an alter ego in a circumstance where equity should intervene, or that TIA is an illusory trust.

¶ 22 While we agree with TIA that no *qui tam* remedy may be sought on its behalf, Taxpayer also sought intervention based upon the rule that a taxpayer may intervene in a legal proceeding brought by a public body or private individual to enforce an allegedly unlawful agreement or expenditure made by the public body. In the trial court, Taxpayer argued that he should be allowed to intervene and obtain equitable relief *against* the TIA. He relied upon *Threadgill v. Peterson*, 1923 OK 662, 219 P. 389 and *Kellogg v. School Dist. No. 10 of*

*Comanche County*, 1903 OK 81, 74 P. 110, 116. In *Kellogg v. School Dist. No. 10 of Comanche County, supra*, we noted the following:

[T]he doctrine that an inhabitant and taxpayer of a municipal corporation may maintain a suit by injunction to prevent the misappropriating of the funds of the corporation, the creation of invalid debts, the levy of unauthorized taxes, and the perpetration of official wrongs, has met the approval of such eminent and distinguished jurists as Field, Dillon, Cooley, Elliott, Campbell, Sharswood, and others, and the courts of highest resort in the United States, and in practically all the states of the Union.

*Kellogg*, 74 P. at 113–114.

Shortly after our pronouncement in *Kellogg*, we relied upon its holding and concluded that a taxpayer could use an injunction as a proper remedy to prevent the officers of a school district from issuing bonds in excess of the debt limit provided by the Oklahoma Constitution.[39]

¶ 23 In *Threadgill v. Peterson, supra*, an action was brought against a school district after labor and material had been furnished for the repair of a school building pursuant to a written contract, and the school district declined to pay the contractually specified amount due to a lack of funds. The school district answered and stated that the sum sued upon was due and unpaid, and judgment was rendered against the school district. Taxpayers claimed that the judgment was based upon a void contract and requested

---

**36.** 60 O.S.2001 § 179:

The trustee, or trustees, under such an instrument or will shall be an agency of the state and the regularly constituted authority of the beneficiary for the performance of the functions for which the trust shall have been created. No trustee or beneficiary shall be charged personally with any liability whatsoever by reason of any act or omission committed or suffered in the performance of such trust or in the operation of the trust property; but any act, liability for any omission or obligation of a trustee or trustees, in the execution of such trust, or in the operation of the trust property, shall extend to the whole of the trust estate, or so much thereof as may be necessary to discharge such liability or obligation, and not otherwise.

**37.** *See, e.g., In re Eufaula Enterprises, Inc.*, 565 F.2d 1157, 1161 (10th Cir.1977) ("When one legal entity is but an instrumentality or alter ego of another, by which it is dominated, a court may look beyond form to substance and may disregard the theory of distinct legal entities in determining ownership of assets in a bankruptcy proceeding.").

**38.** *Oklahoma City Zoological Trust v. State ex rel. Public Employees Relations Bd.*, 2007 OK 21, ¶ 14, 158 P.3d 461, 467 (note omitted).

**39.** *Marlow v. School Dist. No. 4. Murray County*, 1911 OK 273, 116 P. 797, 798.

relief in the form of an order vacating the judgment. The plaintiff objected and argued that "the taxpayers had no right, title, or interest in the subject-matter in question, and no authority of law for the proceeding there sought to be maintained." *Id.* 219 P. at 390. The Court explained that by statute:

> ... any person may be made a party who has or claims an interest in the controversy adverse to the plaintiff; that a taxpayer who sets up that an illegal judgment about to be rendered against a political subdivision will impose an unauthorized and illegal burden upon his property is so interested in the eye of the statute that he can maintain an injunction, if necessary, to invoke relief in equity.

*Threadgill,* 219 P. at 390.

The Court then stated that this right to seek equitable relief was found in § 4881, R.L. 1910, now codified at 12 O.S.2001 § 1397.[40]

¶ 24 More recently, in *Oklahoma Public Employees Association v. Oklahoma Department of Central Services,* 2002 OK 71, ¶ 10, 55 P.3d 1072, 1078, we relied upon *Kellogg* and five of our opinions dating from 1909, 1931, 1944, 1989, and 1999,[41] and stated that

a taxpayer should be allowed to seek relief in a court of equity to challenge illegal taxation or illegal expenditure of public funds. Historically, if a challenged tax is unconstitutional and the remedy at law inadequate, then equitable relief is available for complete relief because "a court of equity ... will not do justice by halves."[42] However, the Legislature has made certain remedies to be *required* for a party seeking relief from unauthorized, excessive, or incorrect taxation, and this Court has historically required compliance with such statutes and not allowed equity to be used to subvert the statutory requirements.[43]

¶ 25 More than a century ago we explained that the version of § 1397 then effect "did not substantially enlarge the general powers of a court of equity, and did not create any new remedy,"[44] and § 1397 is thus *not* an example of the legislature creating a new statutory remedy. The United States Court of Appeals for the Tenth Circuit has noted that the equitable statutory remedy provided by 12 O.S. § 1397 has an important role in providing taxpayers with a remedy to challenge an alleged unlawful levy or

**40.** 12 O.S.2001 § 1397 (emphasis added):

> *An injunction may be granted to enjoin the enforcement of a void judgment, the illegal levy of any tax, charge or assessment, or the collection of any illegal tax, charge or assessment, or any proceeding to enforce the same; and any number of persons whose property is affected by a tax or assessment so levied may unite in the petition filed to obtain such injunction.* An injunction may be granted in the name of the state to enjoin and suppress the keeping and maintaining of a common nuisance. The petition therefor shall be verified by the district attorney of the proper county, or by the Attorney General, upon information and belief, and no bond shall be required, but the county shall, in all other respects, be liable as other plaintiffs.

**41.** *Thompson v. Haskell,* 1909 OK 140, 102 P. 700, 704; *Airy v. Thompson,* 1931 OK 770, 6 P.2d 445, 447–448; *Payne v. Jones,* 1944 OK 86, 146 P.2d 113, 117; *Quinn v. City of Tulsa,* 1989 OK 112, 777 P.2d 1331, 1340; *Brandon v. Ashworth,* 1998 OK 20, 955 P.2d 233, 235.

**42.** *Oklahoma Tax Commission v. Smith,* 1980 OK 74, 610 P.2d 794, 801(quoting *Antrim Lumber Co. v. Sneed,* 1935 OK 1144, 52 P.2d 1040, 1045).

**43.** *See, e.g., Apache Corp. v. State ex rel. Oklahoma Tax Commission,* 2004 OK 48, ¶ 10, 98

P.3d 1061, 1064 (in the context of a statutory remedy to recover tax payments the Court has explained that when a statute creates both a right and a remedy for its enforcement the statutory remedy is exclusive); *R.R. Tway, Inc. v. Oklahoma Tax Commission,* 1995 OK 129, 910 P.2d 972 (judicial remedy would not be created when refund procedure was available to taxpayer but not pursued); *Stallings v. Oklahoma Tax Commission,* 1994 OK 99, 880 P.2d 912, 917–918 (same); *Whig Syndicate, Inc. v. Keyes,* 1992 OK 95, 836 P.2d 1283, 1288 (same); *Adair v. Clay,* 1988 OK 77, 780 P.2d 650, 655, *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1125, 107 L.Ed.2d 1032 (1990) (court may not grant a party a refund of ad valorem taxes paid on property *correctly valued* when the Legislature has not provided a statutory remedy, and courts may only interfere when there is a clear violation of the constitution or statute); *Billingsley v. North,* 1956 OK 153, 298 P.2d 418, 421–422 (that equity will not be used to create a remedy for a tax refund is an application of general rule that equity may not be used to supplant adequate statutory or legal remedies).

**44.** *Wilson v. Wiggins,* 1898 OK 103, 54 P. 716, 718.

collection of a tax, charge or assessment.[45] Section 1397 provides a remedy where the Legislature has not acted to provide a specific required remedy for a particular circumstance, and we have explained that application of § 1397 will not supplant statutorily required remedies when the particular relief sought is within a required statutory remedy.[46] A *qui tam* plaintiff has no interest in the *qui tam* controversy until the public entity fails to take certain actions, but a taxpayer seeking equitable relief, as a taxpayer, possesses an interest recognized by § 1397 that exists independent of the litigation conduct of public officials.

■■■■■ ¶26 In *Kellogg v. School Dist. No. 10 of Comanche County, supra,* we noted the objection to a taxpayer seeking equitable relief because he did not possess any interest in the controversy other than a general interest shared in common with all taxpayers.

We noted that some courts did not allow a taxpayer to have a legal remedy for an injury the taxpayer suffered in common with other taxpayers, and allowed an equitable remedy only if the injury was one that peculiarly affected that taxpayer. *Id.* 74 P. at 112–113. We then noted the courts holding that a taxpayer could, as a mere taxpayer, obtain injunctive relief from an illegal or unauthorized tax. *Id.* 74 P. at 115–116. In *Kellogg* we did *not* recognize a general class of non-Hohfeldian plaintiffs [47] who are allowed to bring public actions for the vindication of public rights and the correction of purely public wrongs of whatever nature.[48] We recognized that a taxpayer who is adversely affected in common with other taxpayers by the conduct of a public body could use equity to correct a public wrong by that public body when the wrong involved the creation of illegal debts of, and the wrongful expenditure of moneys of, the taxpayers. No suggestion is

**45.** The U.S. Court of Appeals for Tenth Circuit recently explained that if a state provides adequate procedural due process to allow a taxpayer to raise any constitutional objections, then the state has done all that is required under the federal Tax Injunction Act, and as a consequence, the federal courts are foreclosed from hearing such a tax challenge; and noted that 12 O.S.2001 § 1397 serves as a plain, speedy and efficient remedy in Oklahoma courts for those seeking to challenge its taxes. *Hill v. Kemp,* 478 F.3d 1236, 1253–1254 (10th Cir.2007), *cert. denied,* 552 U.S. 1096, 128 S.Ct. 873, 169 L.Ed.2d 725, *cert. denied sub nom. Kemp v. Hill,* 552 U.S. 1096, 128 S.Ct. 884, 169 L.Ed.2d 725 (2008).

**46.** *See, e.g., Oklahoma Tax Commission v. Harris,* 1942 OK 157, 126 P.2d 685, 686–687 (adequate remedy at law barred use of statute to enjoin enforcement of income tax assessment); *Perry v. Carson,* 1916 OK 946, 161 P. 175 (statutory remedy for relief from assessment excludes use of equitable remedy). See *Private Truck Council of Am., Inc. v. Oklahoma Tax Comm'n,* 1994 OK 96, 879 P.2d 137, where the Court explained that while a taxpayer could not enjoin the collection of a tax when a statutory remedy for its recovery was available (citing *Harris, supra*), a taxpayer could maintain a declaratory judgment action to challenge the facial validity of a tax statute before the tax becomes due, or challenge the authority of the assessing entity. *Id.* 879 P.2d at 145 n. 2, citing *Oklahoma Tax Commission v. Smith,* 1980 OK 74, 610 P.2d 794, and *United Airlines, Inc. v. State Board of Equalization,* 1990 OK 29, 789 P.2d 1305.

**47.** A non-Hohfeldian plaintiff sues to secure judicial relief that would benefit a public entity or the community as a whole. *State ex rel. Macy v. Bd. of County Comr's of Oklahoma County,* 1999 OK 53, n. 28, 986 P.2d 1130, 1138; *A–Plus Janitorial & Carpet Cleaning v. Employers' Workers' Compensation Ass'n,* 1997 OK 37, n. 23, 936 P.2d 916, 924; *Flast v. Cohen,* 392 U.S. 83, 118–120, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (Harlan, J., dissenting); Jaffe, *The Citizen As Litigant In Public Actions: The non-Hohfeldian or Ideological Plaintiff,* 116 U.Pa.L.Rev. 1033 (1968). *See also* Jaffe, *Standing to Secure Judicial Review: Public Actions,* 74 Harv. L.Rev. 1265, 1269, 1273–1274 (1961) (prototypes for the current public action brought by a non-Hohfeldian plaintiff are found in both the historic prerogative writ of mandamus and the bill in equity for an injunction which tested the legality of public officials' conduct). A Hohfeldian plaintiff seeks to adjudicate a claimed right, privilege, immunity, or power with respect to another party. *State ex rel. Macy v. Bd. of County Comr's of Oklahoma County,* 1999 OK 53, n. 28, 986 P.2d at 1138. In the context of a plaintiff-taxpayer's action that adjudication is *usually* the validity of that particular plaintiff-taxpayer's tax liability.

**48.** *Farrimond v. Coalgate School District,* 1910 OK 67, 108 P. 371, 371–372 (*Kellogg* does not go to the extent of permitting private individuals to restrain public officers to correct purely public wrongs, but that a private individual may restrain public officers to correct a purely public wrong when the wrong involves the creation of debts illegally against, or the wrongful expenditure of moneys of, the taxpayers); *Thompson v. Haskell,* 1909 OK 140, 102 P. 700, 704–705 (same).

made herein that a statutory remedy is available to Taxpayer for the particular claims made herein. We agree with Taxpayer that his allegation of unauthorized or unlawful expenditure of municipal taxes by a city and allegation of unlawful issuance of bonds by a public entity may be addressed by a proceeding brought by a taxpayer seeking equitable relief.

¶ 27 An analysis of the motions to dismiss based upon allegations of mootness due to Taxpayer's failure to seek a stay must be addressed in the context of Taxpayer seeking equitable relief and 12 O.S. § 1397. Equity does not require a useless act;[49] for example, an appeal will be dismissed as moot when a taxpayer has sought injunctive relief to prevent the issuance of bonds which were issued with a commitment of the proceeds during an appeal.[50] Mootness is thus based, in part, upon the nature of the equitable relief sought. However, we must note that in *Payne v. Jones*, 1944 OK 86, 146 P.2d 113, another case involving 12 O.S. § 1397 where appellees sought dismissal alleging mootness, we stated that "In cases having to do with the collection of the public revenue the [appellate court's] discretion should ordinarily be exercised in favor of a decision on the merits." *Id.* 146 P.2d at 116 (explanatory phrase added).

¶ 28 Will an appellate opinion herein be advisory in nature with respect to any equitable relief sought by Taxpayer? Taxpayer's Answer filed in the District Court as Intervenor stated that the bonds had already been issued at that time, and he did not seek to use equity for preventing the bonds to be issued. Taxpayer sought an order canceling the contractual obligations of the City and TIA, and stated that appropriate relief could be a money judgment to retire the bonds.

Taxpayer thus raised several issues, including, but not limited to, the propriety of equity for canceling the issued bonds in these circumstances, and granting relief in the form of an order compelling payment of money. Whether this requested relief is proper in equity was not addressed by appellees in the trial court or by the motions to dismiss herein. We decline to address those issues prior to their consideration and adjudication in the trial court.[51]

¶ 29 Appellees' sole reason for mootness is the summary judgment granted by the trial court. *Generally*, there are four methods for attacking a judgment.[52] Taxpayer herein sought relief as a intervenor in the original suit which resulted in the judgment. Taxpayer also sought vacation of the judgment in the same District Court by another proceeding, and that request remains pending. Taxpayer's request in equity, as such relates to mootness, is *similar* to *Threadgill, supra*. In *Threadgill*, taxpayers sought a post-judgment order vacating that judgment in the proceeding which resulted in the judgment. The trial court denied the requested relief, and on appeal this Court reversed the trial court with directions to vacate the judgment and dismiss a petition that sought to create an unlawful obligation for the public body. Here the request for intervention relief occurred pre-judgment in the proceeding which resulted in judgment, and any relief after appellate mandate would occur post-judgment.

¶ 30 In the *Tal* cases we explained, and relied upon, the concept that the public body was representing all of its citizens by its conduct in presenting for adjudication a justiciable controversy to the trial court. The presentation of a justiciable controversy

---

49. *Strong ex rel. State v. Oklahoma Police Pension and Retirement Bd.*, 2005 OK 45, ¶ 12, 115 P.3d 889, 894.

50. *Lawrence v. Cleveland County Home Loan Auth.*, 1981 OK 28, 626 P.2d 314, 315.

51. This Court, in the exercise of its appellate jurisdiction, does not make first-instance determinations of disputed issues of either law or fact. *Baker v. Saint Francis Hospital*, 2005 OK 36, ¶ 8, 126 P.3d 602.

52. Morgan, *Delayed Attacks on Final Judgments*, 33 Okla.L.Rev. 45, 48 (1980) ( [1] statutory relief from the judgment sought by motion in the original suit, [2] statutory relief from the judgment by independent suit, [3] equitable relief by independent suit, and [4] a proceeding which challenges the effect of the judgment as a collateral but crucial issue).

included (1) the presumption that the public body's litigation conduct was in good faith, and (2) the taxpayer's duty to rebut this presumption to intervene as a *qui tam* intervenor.[53] Because this controversy involves (1) a judicial declaration on contested public expenditures, (2) a taxpayer alleging that the issues have not been fairly presented to the trial court and that justiciability is absent, (3) the relief sought by intervention is in equity to challenge the alleged expenditures, and (4) the inadequacy of a public body to represent a taxpayer for purposes of intervention while opposing a taxpayer's claims on the merits,[54] we hold that Taxpayer's claim for equitable relief presented by a motion to intervene is not moot by the judgment rendered during the appeal. *Payne v. Jones, supra; Threadgill v. Peterson, supra.*

¶ 31 Taxpayer's motion relied upon 12 O.S.Supp.2003 § 2024, which provides for intervention by right, permissive intervention, and intervention by the State of Oklahoma. Taxpayer sought both intervention by right and permissive intervention.[55] We have explained that § 2024(A)(2) contains four requirements for intervention: (1) the motion to intervene must be timely; (2) the intervenor must claim a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.[56] The City argued that the motion to intervene was untimely. Federal courts have stated that timeliness for intervention is determined "in light of all of the circumstances," and non-exclusive factors considered include the length of time since the movant knew of its interests in the case; prejudice to the existing parties; prejudice to the movant; and the existence of any unusual circumstances.[57]

¶ 32 TIA filed its petition for declaratory judgment on August 17th and its motion for summary judgment two months later on October 16th. The responses thereto were filed October 29th and November 2nd, and four days after the last response Taxpayer filed his motion to intervene on November 6, 2007. TIA's petition for declaratory judgment included an attached photocopy of the *qui tam* demand incorporated by reference in the pleading. Taxpayer's motion to intervene included a *qui tam* claim based upon allegations that TIA, the City, and THL were not presenting a justiciable controversy to the trial court for adjudication. In addition to the pleadings, the motion to intervene

**53.** *State ex rel. Moshe Tal v. City of Oklahoma City,* 2002 OK 97, ¶¶ 8, 11, 61 P.3d 234, 241, 242; *State ex rel. Moshe Tal. v. City of Oklahoma City,* 2000 OK 70, ¶ 6, 19 P.3d 268, 271–272 *cert. denied,* 534 U.S. 814, 122 S.Ct. 40, 151 L.Ed.2d 13 (2001); *State ex rel. Tal v. Norick,* 1999 OK 85, ¶ 9, 991 P.2d 999, 1001; *City of Oklahoma City v. Oklahoma City Urban Renewal Authority,* 1999 OK 71, ¶ 31, 988 P.2d 901, 908.

**54.** See discussion at ¶ 36 herein.

**55.** 12 O.S.2001 § 2024(A) & (B):
A. INTERVENTION OF RIGHT. Upon timely application anyone shall be permitted to intervene in an action:
1. When a statute confers an unconditional right to intervene; or
2. When the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest.
B. PERMISSIVE INTERVENTION. Upon timely application anyone may be permitted to intervene in an action:

1. When a statute confers a conditional right to intervene; or
2. When an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

**56.** *Brown v. Patel,* 2007 OK 16, ¶ 17, 157 P.3d 117, 124.

**57.** *State of Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.,* 619 F.3d 1223, 1232 (10th Cir.2010) quoting *Sanguine, Ltd. v. U.S. Dep't of Interior,* 736 F.2d 1416, 1418 (10th Cir.1984).

expressly relied upon the motion for summary judgment and the responses thereto. Taxpayer, *as a qui tam plaintiff*, had a burden of showing a lack of diligence to prosecute a justiciable controversy by TIA. In these circumstances, Taxpayer had to wait for TIA to "show its hand" and demonstrate exactly what TIA was asking the trial court to rule upon. Any uncertainty raised by the pleadings on the issue of the diligence of TIA in presenting Taxpayer's claim to the trial court for adjudication was resolved by the TIA's motion for summary judgment and brief. Contrary to the charge of an untimely filing made by the City, Taxpayer's motion to intervene was filed with alacrity after TIA showed exactly what the "merits" of the controversy were according to its view. Taxpayer's wait and see approach before filing a combined *qui tam* and equitable relief intervention request was reasonable. We reject the argument that the motion to intervene was untimely.

¶ 33 The objection to the intervention filed in the District Court by TIA did not address either *Threadgill v. Peterson, supra*, or *Kellogg v. School Dist. No. 10 of Comanche County, supra*, and it did not address, and therefore did not object to, the propriety of intervention based upon those opinions and the right of a taxpayer to seek equitable relief pursuant to 12 O.S. § 1397. TIA does not address this issue in its appellate brief or

answer on certiorari. THL argued on appeal that *Threadgill* does not apply because the acts of the officials therein were unlawful, *Threadgill* "was based upon facts materially different than those before this court," and that in any event, *Threadgill* was "effectively overruled" by *Tal I*.[58] Similarly, in the trial court the City argued that *Threadgill* and *Kellogg* involved acts by officials that were unlawful, and that since the City's acts were lawful when creating the publicly funded obligations the two cases did not apply. THL and the City thus made the question of intervention turn on the *merits* of Taxpayer's claim.

■■■ ¶ 34 While on rare occasions an intervenor may be required to satisfy an evidentiary burden for intervention,[59] intervention is usually determined on the basis of the *allegations* made in the motion to intervene and pleading filed by the intervenor. In 1938 we explained that intervention is based upon *allegations* in the intervenor's *pleading* when seeking intervention.[60] More recently we explained that when a party "intervenes" the *merits* of the claim asserted by the intervenor is not adjudicated when the party is allowed to intervene, but "once allowed to intervene, the burden is on the intervenor to *prove* his allegation."[61] Generally, in federal courts prior to our adoption of modified federal rules for our Pleading Code, the initial

58. In *State ex rel. Wright v. Oklahoma Corporation Commission*, 2007 OK 73, 170 P.3d 1024, an opinion dating after *Tal I*, we noted that the issue of *qui tam* taxpayers also seeking intervention *as taxpayers* for additional equitable relief was not properly before us for review. *Id.* n. 24, 170 P.3d at 1041.

59. For example, an intervenor seeking *qui tam* relief must show the inadequacy of the presentation of the controversy to the court by the public body. While this may be a *pleading* burden which challenges the face of the public body's petition for declaratory relief, "[intervenor] must show the insufficiency of the declaratory judgment petition as a condition precedent to a successful intervention in the declaratory judgment proceeding" (*State ex rel. Wright*, 2007 OK 73, at ¶ 58, 170 P.3d at 1041); the Court has also recognized the possible "half-hearted" litigation by a public body presenting the merits of a claim challenging its actions (*State ex rel. Moshe Tal*, 2002 OK 97, at ¶ 22, 61 P.3d at 246), and allowed a taxpayer to submit an affidavit or other

evidentiary substitute to show a lack of diligence by the public body in presenting a justiciable controversy (*City of Broken Arrow*, 2011 OK 1, ¶ 26, 250 P.3d 305, 316).

60. *Morton v. Baker*, 1938 OK 409, 82 P.2d 998, 999 (Syllabus by the Court states that intervention should be allowed upon proper allegations in the petition showing the party has an interest in the subject of the litigation). *Accord, Fitts v. Custer Slide Min. & Development Co.*, 266 F. 864, 866 (8th Cir.1920) (court stated that "the question as to whether the petitioner should be allowed to intervene was a matter determinable upon the face of the petition for leave to intervene").

61. *McCrary v. McCrary*, 1988 OK 122, 764 P.2d 522, 525 (Court explained that the merits of intervenor's claim was not addressed on a motion to allow party to intervene pursuant to former 12 O.S. 1981 § 237, now repealed and replaced by 12 O.S. § 2019, joinder of persons needed for just adjudication).

burden on the intervenor was a pleading burden, a burden to plead sufficient to satisfy federal rule 24 (our § 2024), with ordinary pleading requirements for the accompanying pleading where the nonconclusory allegations of the motion and accompanying pleading were deemed to be true when the intervention was challenged.[62] The federal focus on the sufficiency of the allegations in the motion to intervene and accompanying pleading is consistent with our focus on the sufficiency of the intervenor's *allegations* when seeking intervention.[63]

¶ 35 Taxpayer's claim in the District Court is based upon allegations of unlawful public expenditures. *Threadgill* determined that taxpayers have an interest in litigation that seeks to create funding obligations on public bodies that are unlawful. Taxpayer's claim of interest herein pursuant to *Threadgill* and similar opinions is, generally, "an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." 12 O.S.2001 § 2024(A)(2). Thus THL's and the City's objections using a merits-based argument were incorrect, and they

should have been rejected by the District Court.

■ ¶ 36 TIA's request for declaratory relief required it to present *the merits of Taxpayer's claims* that Taxpayer was seeking to present himself in the context of obtaining equitable relief. This is not merely an intervenor seeking to intervene in the same cause of action as defined by the transaction or occurrence,[64] but a party seeking to intervene to present the identical claim. Taxpayer argued that a public body will not adequately represent proposed intervenor's interest in seeking equitable relief. Adequacy of representation by the existing parties is one factor considered on a motion to intervene by an intervenor. We have explained that "So long as the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions, a district judge does not exceed the bounds of discretion by concluding that the interests of the intervenor are adequately represented." [65] Some federal courts have indicated that a conflict of interest may be used to show a motivation to litigate less than vigorously on behalf of an intervenor,[66] and that the interests need not be totally adverse before intervention is proper,[67] and that a

---

**62.** See, *e.g., Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C.Cir.1981) ("motions to intervene are usually evaluated on the basis of well pleaded matters in the motion, the complaint, and any responses of opponents to intervention"); *Rhode Island Federation of Teachers, AFL–CIO v. Norberg*, 630 F.2d 850, 854 (1st Cir.1980) (Whether of right or permissive, intervention under federal Rule 24 is conditioned by the Rule's requirement that the intervenor state a well-pleaded claim or defense to the action); *Central States, etc. v. Old Security Life Insurance Company*, 600 F.2d 671, 679 (7th Cir.1979) ("All nonconclusory allegations supporting a motion to intervene are taken as true, absent sham, frivolity, or other objections."); *Mendenhall v. M/V Toyota Maru No. 11*, 551 F.2d 55, n. 2 (5th Cir.1977) ("For the purposes of passing upon the Company's right to intervene, these allegations are accepted as true.") (citing, Wright and Miller, *Federal Practice and Procedure:* Civil § 1914). *Stadin v. Union Electric Co.*, 309 F.2d 912, 917 (8th Cir.1962) (nonconclusory allegations of motion and pleading are taken as true).

**63.** Our Pleading Code adopts a procedure for intervention based upon similar provisions in the Federal Rules of Civil Procedure. *Brown v. Patel*, 2007 OK 16, ¶ 16, 157 P.3d 117, 123. Gener-

ally, the judicial construction placed on the federal rules by federal and state courts should be presumed to have been adopted by Oklahoma, unless the Oklahoma Pleading Code has been modified from the text of the federal rules. *Id.* at n. 14, 157 P.3d at 124.

**64.** This Court has explained that a cause of action (or claim for relief) is defined using the transaction, occurrence, or wrongful act. *Chandler U.S.A., Inc. v. Tyree*, 2004 OK 16, n. 3, 87 P.3d 598, 601.

**65.** *Brown v. Patel*, 2007 OK 16, ¶ 18, 157 P.3d 117, 125.

**66.** *See State of New Mexico v. Aamodt*, 537 F.2d 1102, 1106 (10th Cir.1976), *cert. denied*, 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572 (1978); *Smith v. Clark Sherwood Oil Field Contractors*, 457 F.2d 1339 (5th Cir.1972).

**67.** *Nuesse v. Camp*, 385 F.2d 694, 703 (D.C.Cir. 1967) ("interests need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate").

proposed intervenor "cannot be required to look for adequate representation to one who is his [or her] opponent."[68] In *Threadgill v. Peterson, supra,* we explained the important public policy of recognizing an equitable remedy used by taxpayers to challenge alleged illegal or unlawful public expenditures when a court is used to validate the public body's expenditure or transfer of public property.[69] We conclude that Taxpayer alleged an adverse interest sufficient for § 2024(A)(2) intervention by right in TIA's proceeding seeking declaratory relief. *Oklahoma Public Employees Association v. Oklahoma Department of Central Services, supra; Threadgill v. Peterson, supra;* and *Kellogg v. School Dist. No. 10 of Comanche County, supra.*

¶ 37 In summary, we conclude that no *qui tam* claim relief could be sought on behalf of the TIA, that Taxpayer pled a claim seeking relief in equity that has been recognized by Oklahoma courts since before statehood, that the claim for equitable relief is not moot, and that the District Court erroneously denied the motion to intervene on the claim seeking equitable relief.

### III.   *Qui Tam* Intervention

¶ 38 Whether *qui tam* intervention is proper requires a judicial determination that the public body has presented a justiciable controversy for the trial court to adjudicate.[70] The adequacy of TIA's litigation conduct in presenting antagonistic demands of Taxpayer is not an issue as such relates to the TIA since we have concluded herein that Taxpayer has no *qui tam* remedy on behalf of the

TIA. However, Taxpayer also pressed a *qui tam* claim on behalf of the City.

¶ 39 The City responded to TIA's motion and brief for summary judgment, and agreed with the legal issues briefed by TIA. TIA's motion and brief for summary judgment identified Taxpayer's claims that: (1) public trusts may not participate in retail outlets; (2) the incremental ad valorem and sales tax revenues from the Tulsa Hills Increment District could not be used to retire the bonds without violating Article 10 §§ 14, 17 and 19 of the Oklahoma Constitution; and (3) financial assistance to THL was not approved by the voters. Taxpayer alleged that the Local Development Act may not be used to create development in an area where investment, development, and economic growth would have occurred absent application of the Act, (62 O.S. § 852), and the use of that Act by the parties was improper.

¶ 40 Taxpayer objected to TIA, as a public trust, participating in a retail outlet. Taxpayer relied on *House of Realty, Inc. v. City of Midwest City,* 2004 OK 97, 109 P.3d 314, The Local Development Act, (62 O.S.2001 §§ 850–869), and 60 O.S.2001 § 178.4.[71] In *House of Realty,* we agreed with the Attorney General that § 178.4 contains a broad prohibition on public trusts engaging in financing, constructing, and operating retail outlets, and stated that this statute "prohibits a trust engaging in an 'activity' in a retail outlet."[72] In 2010 the Legislature amended § 178.4 and removed the language therein that prevented a public trust from engaging in an activity in a retail outlet.[73]

---

**68.**  *Jansen v. City of Cincinnati,* 904 F.2d 336, 343 (6th Cir.1990) quoting 7C Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1909 at 321–23 (1986).

**69.**  *Threadgill v. Peterson,* 1923 OK 662, 219 P. 389, 390.

**70.**  *City of Broken Arrow,* 2011 OK 1, ¶ 32, 250 P.3d 305, 317–318.

**71.**  Title 60 O.S.2001 § 178.4 provides in pertinent part:

"Trusts created under the provisions of Sections 176 through 180.55 of this title or any amendments or extensions thereof shall not include any trust purpose, function nor activity: in any wholesale outlet, unless said wholesale outlet is a

direct part of the industry.  Provided, however, that the distribution centers for intoxicating and nonintoxicating alcoholic beverages as defined in Title 37 of the Oklahoma Statutes shall not qualify under the provisions of this title;  nor shall it include a retail outlet unless said retail outlet is operated in conjunction with and on the same premises as the industrial, manufacturing, cultural, recreational, parking, transportation or airport facility ..."

**72.**  *House of Realty, Inc. v. City of Midwest City,* 2004 OK 97, ¶¶ 22, 24, 109 P.3d 314, 320.

**73.**  2010 Okla. Sess. Laws Ch. 195, § 1 (eff. May 4, 2010).  See 60 O.S.Supp.2010 § 178.4. The parties did not brief legal issues involving the 2010 amendment and we decline to *sua sponte*

¶ 41 TIA argued that the public trust in *House of Realty* engaged in land acquisition, construction costs, and retail operation. TIA argued that it was providing funds for construction of specified items which it classified as infrastructure improvements and that these improvements were not of the same nature as those discussed in *House of Realty.* TIA concluded that the construction it was funding was thus not an activity prohibited by 60 O.S.2001 § 178.4. The City adopted the arguments of the TIA and argued that the TIA was funding "public improvements" via funds provided to the developer. The City also argued that two sections of the Local Development Act, § 853(14)(a)(k)(*o*) and § 863(A) authorized TIA's conduct. The City argued that § 863(A) of the Act allowed TIA to engage in activity otherwise prohibited by 60 O.S.2001 § 178.4. Section 863(A) states:

> A. With the approval of the governing body, **a public entity,** other than a city, town or county, may issue tax apportionment bonds or notes, other bonds or notes, or both, the proceeds of which **may be used to pay project costs pursuant to the plan notwithstanding any other statutory provision to the contrary.**

The City argued that if the funds provided to the developer were for the purpose of "project costs" as defined in the Local Development Act at § 853, then § 178.4 would have no effect; *i.e.,* a public trust could violate § 178.4 and engage in retail activity if it were acting pursuant to the Local Development Act. The City pointed to the definition of "project costs" in § 853(14).[74] THL made

similar arguments and argued that the funds it received were for the purpose of infrastructure construction and public improvement. This issue was adequately presented to the trial court for adjudication of antagonistic demands.

¶ 42 Taxpayer argued that the financing violated Okla. Const. Art. 10 §§ 14, 17, and 19, and that a vote of the people was necessary for public-funding of the project. He argued that the funds transferred to the developer for on-site infrastructure improvements were not for a public purpose. As in *City of Broken Arrow:* "The issue before us on the constitutional claims is whether the City presented the legal claims of the Taxpayer [as a *qui tam* intervenor] to the trial court."[75] TIA's brief in support of its motion for summary judgment has a discussion of Okla. Const. Art. 10 § 6C & § 19 and a lengthy discussion of the Local Development Act that need not be repeated herein. TIA, the City, and THL relied primarily on constitutional and statutory language as well as two of our opinions.[76] Our review of the record shows that the combined filings of TIA, THL, and the City presented a justiciable controversy to the trial court as measured against Taxpayer's *qui tam* request for relief filed *in the District Court.*[77] We affirm the order of the District Court to the extent that it denies intervention to Taxpayer as a *qui tam* plaintiff on behalf of the City.

## IV. Summary

¶ 43 Our conclusion that a justiciable controversy was presented for purposes of Tax-

---

engage in an analysis of the amended version of the statute.

74. 62 O.S.Supp.2004 § 853(14) provides in pertinent part:
" 'Project costs' ... include, but are not limited to: (a) public works, public improvements, ... (k) costs of construction of public works or improvements, including but not limited to highways, roads, streets, bridges, sewers, traffic control systems and devices, telecommunications systems, parks, water distribution and supply systems, curbing, sidewalks and any similar public improvements, common utility or service facilities, landscaping, parking, and water detention/retention systems, ... and (*o*) assistance in development financing to the extent the governing body approves such financing;...."

75. *City of Broken Arrow,* 2011 OK 1, ¶ 33, 250 P.3d 305, 318 (explanatory phrase added).

76. *In re Application of the Oklahoma Development Finance Authority,* 2004 OK 51, 94 P.3d 87, and *Muskogee Urban Renewal Auth. v. Excise Bd. of Muskogee County,* 1995 OK 67, 899 P.2d 624.

77. We do not use legal authority or facts raised for the first time by a *qui tam* plaintiff on appeal when we measure the adequacy of a public body's presentation of that plaintiff's *qui tam* intervention claims for a justiciable controversy and declaratory relief. *House of Realty, Inc. v. City of Midwest City,* 2004 OK 97, ¶ 6, 109 P.3d 314, 317; *Matter of Termination of Parental Rights,* 1993 OK 10, 847 P.2d 768, 770; *Bane v. Anderson, Bryant & Co.,* 1989 OK 140, 786 P.2d 1230, 1236.

payer's *qui tam* remedy is *not* a decision on the merits of the issues raised by the Taxpayer, TIA, the City, or THL. The appeal presents only the narrow issue of the trial court's denial of intervention.[78] Taxpayer was not allowed to intervene and his burden to prove the illegal transfer or expenditure of public funds had not yet arisen.[79] We thus reach no conclusions concerning the merits of Taxpayer's claims, and we do not address defenses to those claims the defendants may possess.

¶ 44 We are not called upon in this proceeding to correct any decision of the trial court on the exact nature of a taxpayer's equitable remedy in the circumstances before us, or to explain whether specific equitable relief is proper for the present circumstances according to principles of equity. The parties did not address these issues in the trial court and we decline to address them prior to the parties presenting them for trial court adjudication. Our decision on intervention requesting equitable relief concludes only that Taxpayer met his burden to plead a claim seeking equitable relief and that he satisfied 12 O.S. § 2024.

¶ 45 We affirm the trial court's order to the extent that it denied Taxpayer's motion to intervene as a *qui tam* plaintiff. We reverse the trial court's order to the extent that it denied Taxpayer's motion to intervene as a taxpayer seeking equitable relief. The opinion of the Court of Civil Appeals is vacated. The matter is remanded to the District Court for further proceedings consistent with this opinion.

¶ 46 ALL JUSTICES CONCUR.

---

**78.** *City of Broken Arrow*, 2011 OK 1, at ¶ 30, 250 P.3d at 317; *State ex rel. Tal*, 2002 OK 97, ¶ 9, 61 P.3d at 241.

**79.** *City of Broken Arrow*, 2011 OK 1, at ¶ 24, 250 P.3d at 315, citing *McCrary v. McCrary*, 1988 OK 122, 764 P.2d 522, 525.